ESTATE OF LELA BARRY VARDELL, DECEASED, FIRST NATIONAL BANK IN DALLAS, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 75855. Filed October 17, 1960.

*Henry C. Coke, Jr., Esq., James K. Rushing, Esq.,* and *Leland E. Fiske, Esq.,* for the petitioner.

*John P. Higgins, Esq.,* for the respondent.

OPINION.

BLACK, *Judge:* We shall take up the issues in their order.

### *Issue 1.*

The decedent and Vardell were husband and wife and all of their property was community property. Vardell died on February 27, 1934, leaving a will which put his wife to an election, either to take her community one-half of the property or to take the income from the entire community estate for life, with the remainder passing to a trust for their children and grandchildren. The will provided that for the term of her life Lela shall have "full and absolute authority to handle, manage, sell, and in any manner dispose of said properties, or any part thereof." Lela elected to take under the will and during her lifetime received the entire income from the community assets. At her death the remaining community assets passed to the trust provided in her husband's will. In decedent's estate tax return no part of the community assets was included in her estate. The Commissioner in his determination of the deficiency has included decedent's proportion of the community assets in her gross estate.

The question for decision is: Were all of the community assets owned by decedent and her husband at the time of the husband's death in 1934 and disposed of by the husband in his will in the manner aforesaid properly excluded from decedent's estate in the

estate tax return which was filed, or should they be included to the extent determined by the Commissioner in his deficiency notice?

At the outset it would perhaps be well to note that in the estate tax return filed by decedent's estate, certain property was included which had no connection with the community property interest which the Commissioner has included in decedent's gross estate. Decedent's estate paid the tax shown on said return. There is no issue herein concerning the value of the property thus included. It should also be noted that the Commissioner in his determination has included only Lela's share of the community property in her gross estate. Ordinarily, that community interest would be one-half but in the present instance 53.84 per cent has been included in decedent's estate. That fact has been explained in petitioner's brief as follows:

While decedent's interest in the community estate was at time of her election equal to her husband's, her interest became 53.84% and his, 46.16% after payment of taxes and other charges payable from his part. Therefore, "one-half", when used, will mean 50% at time of her election and the appropriate percentage thereafter. The term "community property" not only refers to the common property at time of election, but all mutations thereof occurring thereafter.

The Commissioner does not contest the correctness of the above statement.

The petitioner contends that in 1934 after her husband's death Lela elected to take under the will and that by doing so there was a sale or exchange by her of her interest in the entire community estate for a life interest in the entire community estate. Petitioner further contends that this action of Lela was a sale or exchange of her interest in the community estate for a full and adequate consideration in "money or money's worth" within the meaning of section 2036, I.R.C. 1954, and hence none of her community interest in the property is includible in her estate at the time of her death.

Respondent's primary contention is that the transaction in 1934 by which Lela elected to take under the will was an incompleted gift of her remainder interest in the community property which did not become complete and effective until Lela's death in 1955 and hence the value of her interest is includible in her gross estate at the time of her death under section 2036, I.R.C. 1954. Alternative contentions are made by both parties but due to our decision on Issue 1 herein made, we do not deem it necessary to state them here.

Both parties argue their respective positions at length and cite and discuss many cases which they say support their respective contentions. It would make this opinion too long to take up and discuss these cases which have been cited by the respective parties and we

shall not attempt to do so. We think the applicable and controlling statute is section 2036 of the 1954 Code printed in the margin.[1]

Were it not for the language in Vardell's will which provided "and so long as she shall remain a widow, she to have, during such time, full and absolute authority to handle, manage, sell, and in any manner dispose of said properties, or any part thereof," it might well be that none of the property in question should be included in decedent's gross estate. This precise language was before the Court of Civil Appeals of Texas in the proceeding of *Ellis* v. *First National Bank in Dallas, supra.* The question before the court in that case was whether Lela had the power and authority to make a gift to her daughter Lela Vardell Ellis of certain shares of Southwestern Life Insurance Company stock which were owned as community property by Vardell and Lela at the time of Vardell's death in 1934. It is this same gift of shares in Southwestern Life Insurance Company which is involved in Issue 2 which we shall discuss later. The Court of Civil Appeals of Texas held that Lela did have the power to make the gift in question and that it was a valid gift and that Lela Vardell Ellis, her daughter, thereby became the owner of the property. It seems to us that in view of this decision of the Texas court that Lela, at the time of her death, possessed the power to dispose of, by inter vivos gifts as distinguished from testamentary disposition, her entire community interest in the property and the testamentary trust established by Vardell's will would take nothing for the remaindermen. Doubtless it was very improbable that she would do this. Nevertheless, owing to this provision in Vardell's will we think that respondent is correct in his contention that the transaction in 1934 by which Lela elected to take under her husband's will resulted in an incompleted gift to the remaindermen which did not become complete until Lela's death in 1955. We think that because of the provisions of section 2036, 1954 Code, Lela's interest in the community property upon her death was includible in her gross estate.

We, therefore, sustain respondent on Issue 1. Cf. *Olson* v. *Reisimer,* 271 F. 2d 623 (C.A. 7, 1959). In that case the Seventh Circuit, in re-

---

[1] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

(b) LIMITATION ON APPLICATION OF GENERAL RULE.—This section shall not apply to a transfer made before March 4, 1931; nor to a transfer made after March 3, 1931, and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

**58**

versing the United States District Court below and holding against the taxpayer, said:

The joint will embodied Nellie's and Ben's careful plan for the ultimate disposition of their property to their sole heir at law, Grover, retaining to themselves, and to the survivor of them, complete enjoyment thereof until the survivor died. It is not improper that they should establish and execute sucn a plan. Neither is it a hardship nor injustice that an estate tax be assessed in this case. Neither the ingenuity of the author of the plan nor its uniqueness can shield the transmission of this estate to the owner's sole heir at law from a federal estate tax. Various methods have been set up by taxpayers, especially husbands and wives, by trust arrangements and otherwise, to avoid the impact of federal estate taxes. Yet the courts have universally held that such arrangements do not defeat the imposition of estate taxes. * * *

### Issue 2.

On March 10, 1955, decedent made a gift to her daughter Lela Vardell Ellis of 1,000 shares of Southwestern Life Insurance Company stock, which stock was a part of the community assets of decedent and her deceased husband at the time of his death and of which decedent had the power of disposition during her lifetime. No part of this gift was reported in her estate tax return. The Commissioner proposes to include in her estate the same proportion of this gift as her proportion of the community assets. The question for decision is: Was this gift properly excluded from decedent's estate?

Respondent in his brief relies upon section 2035 of the 1954 Code and the regulations thereunder printed in the margin.[2]

---

[2] I.R.C. 1954:
SEC. 2035. TRANSACTIONS IN CONTEMPLATION OF DEATH.
(b) APPLICATION OF GENERAL RULE.—If the decedent within a period of 3 years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment) ; but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death.
In interpreting section 2035(b), section 20.2035–1 of the Estate Tax Regulations provides, as follows:
Sec. 20.2035–1 TRANSACTION IN CONTEMPLATION OF DEATH.—(a) In general.—A decedent's gross estate includes under section 2035 the value of any interest in property transferred by a decedent in contemplation of death within 3 years before his death, except to the extent that the transfer was for a full and adequate consideration in money or money's worth (see sec. 20.2043–1). With the exception noted in the preceding sentence, the decedent's gross estate includes as a transfer in contemplation of death the value of any interest in property transferred within 3 years before the decedent's death, unless the transfer is shown not to have been made in contemplation of death. The result is not affected by the fact that at the time of the transfer the decedent parted absolutely and immediately with his enjoyment of and title to the property.
*    *    *    *    *    *    *
(c) Definition.—The phrase "in contemplation of death", as used in this section, does not have reference to that general expectation of death such as all persons entertain. On the other hand, its meaning is not restricted to an apprehension that death is imminent or near. A transfer "in contemplation of death" is a disposition of property prompted by

After careful consideration of the evidence in the record on this issue we made a finding of fact that, "The gift to Lela Vardell Ellis on March 10, 1955, was not made in contemplation of death." We think the facts in the record fully justify this ultimate finding of fact. It is dispositive of Issue 2 which we decide in favor of petitioner.

*Decision will be entered under Rule 50.*

the thought of death (although it need not be solely so prompted). A transfer is prompted by the thought of death if (1) made with a purpose of avoiding death taxes, (2) made as a substitute for a testamentary disposition of the property, or (3) made for any other motive associated with death. The bodily and mental condition of the decedent and all other attendant facts and circumstances are to be scrutinized in order to determine whether or not such thought prompted the disposition.