ESTATE OF LILLIAN B. GREGORY, DECEASED, BANK OF AMERICA, N.T. & S.A., EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 93130.   Filed March 25, 1963.

*Desmond N. Bonnington, Esq.*, for the petitioner.
*Claude R. Wilson, Jr., Esq.*, for the respondent.

### OPINION.

FORRESTER, *Judge:* The respondent has determined a deficiency in the estate tax of petitioner's decedent in the amount of $20,328.59.[1] The petitioner herein is the executor of the estate of Lillian B. Gregory, deceased. The Federal estate tax return for the decedent's estate was filed with the district director of internal revenue for San Francisco, California. Certain agreed adjustments will be made under Rule 50, and the only remaining issues are whether decedent retained a life estate under the purview of section 2036[2] and, if so, the amount, if any, of consideration received for said transfer which is properly cognizable under section 2043.

All of the facts have been stipulated and are so found.

Petitioner, Bank of America, N.T. & S.A., is a national trust and savings association with its principal office at San Francisco, California. It is the duly appointed, qualified, and acting executor of the estate of Lillian B. Gregory, deceased (hereinafter sometimes referred to as Lillian or decedent). It was a coexecutor of the estate of Silas B. Gregory, her husband who predeceased her (hereinafter sometimes referred to as Silas), the other coexecutor being John Barber Gregory, a son of Lillian. It was a cotrustee of the testamentary trust created by the will of said Silas and presently is the sole trustee under said will.

---

[1] In his amended answer, respondent asserts that $21,535.75 is the proper amount of deficiency. See sec. 6214(a), I.R.C. 1954.

[2] Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954.

Silas and Lillian were married in 1896 and were husband and wife continuously from that date until the death of Silas in 1951. They established their domicile in California in approximately 1896 and resided in the State of California continuously thereafter until their deaths. John Barber Gregory and Paul C. Gregory are the issue of said marriage.

Silas died testate in Berkeley, California, on March 3, 1951. At the time of his death he owned no separate property, but left community property acquired after 1927 of a total value of $186,104.44, in which, under the laws of the State of California, his wife had a present, existing, equal, and vested one-half interest. In the Federal estate tax return filed for Silas one-half of the community property, $93,052.22, was reported as the total gross estate. The remaining half of the community property was reported in said return, but was excluded from the total gross estate as the community property of Lillian.

The last will and testament of Silas was admitted to probate in the Superior Court of the State of California, in and for the County of Alameda, in proceeding No. 114,799, and letters testamentary were issued by said court on March 20, 1951.

Lillian was born October 15, 1873, and on March 3, 1951, the date of death of Silas, she was of the age of 77 years, 4 months, and 18 days.

By the terms of the will of Silas admitted to probate, Lillian was required to elect to either (a) take her share in the community property, or (b) permit her share of the community property to pass into the testamentary trust under said will. Lillian did elect to let her interest in the community property pass into the testamentary trust created under the will of Silas.

The total value of the property passing into the testamentary trust estate of Silas at the time of its creation was $126,560.39. Of this total value, by reason of adjustments in probate expenses and deductions in Silas' estate, it was stipulated that Silas contributed $60,635.31, or 47.91 percent, and Lillian contributed $65,925.08, or 52.09 percent.

By paragraphs first and second of Silas' will, it was stated that:

*FIRST:* I declare that I am a married man and my wife's name is LILLIAN B. GREGORY; that I have two children now living, namely, my sons JOHN BARBER GREGORY and PAUL C. GREGORY, both over the age of majority; that I have no deceased children; that I have no separate property but only community property of myself and my wife.

*SECOND:* It is my intention hereby to dispose of not only my share of the community property of myself and my wife, but of our entire community property, and it is my further intention that my wife shall elect whether she shall take under this Will or the share of our community property given her by law.

In either event, however, my wife shall be entitled to a probate homestead and family allowance out of my estate. If my wife should elect to take the share of our community property given her by law, then the provisions of this Will in her favor, other than those of paragraph THIRD hereof, shall be of no effect and the remaining provisions of this Will shall be fully effective, the same as if my wife had predeceased me.

By paragraph third of said will, Silas bequeathed most of his personal effects to Lillian. By paragraph fourth, Silas devised and bequeathed the residue of his estate to Bank of America National Trust and Savings Association and John Barber Gregory as cotrustees. After reciting the various trustee powers respecting the trust, paragraph fourth provided that:

The Trustees shall pay to or apply for the benefit of my wife, LILLIAN B. GREGORY, during her lifetime, all of the net income from the trust estate in as nearly equal monthly installments as is practicable, having in mind the anticipated annual net income from the trust estate. If at any time the net income payable to my wife as hereinabove provided should be less than the sum of $500.00 per month, then in such event the Trustees shall pay to or apply for the benefit of my wife such amounts from the principal of the trust estate as will, when added to the said net income payable to her, equal the sum of $500.00 per month.

If at any time, in the absolute discretion of the Trustees, my wife, LILLIAN B. GREGORY, should for any reason be in need of funds for her proper care, maintenance and support, the Trustees may in their absolute discretion pay to or apply for the benefit of my wife, in addition to the payments hereinabove provided for her, such amounts from the principal of the trust estate, up to the whole thereof, as the Trustees may from time to time deem necessary or advisable for her use and benefit.

If my wife, LILLIAN B. GREGORY, should survive distribution of the trust estate to the Trustees, then upon my wife's death the Trustees shall pay from the principal of the trust estate the expenses of her last illness, funeral and burial, unless the Trustees shall determine in their absolute discretion that other provisions have been made or other means are available for the payment of such expenses.

After providing for the disposition of the trust corpus upon the death of Lillian, paragraph fourth also noted that:

No beneficiary of this trust shall have any right to alienate, encumber or hypothecate his or her interest in the principal or income of the trust in any manner, nor shall such interest of any beneficiary be subject to claims of his or her creditors or liable to attachment, execution or other process of law.

Paragraph fifth provided that the probate estate was to be distributed as though Lillian had survived the distribution and had thereafter passed away in the event that she did not survive distribution of the estate to the trustees.

Said will was signed and witnessed on September 1, 1950. On that same date, Lillian signed the following witnessed statement:

I, LILLIAN B. GREGORY, the wife of SILAS B. GREGORY, the maker of the foregoing Will, having read it in its entirety, and clearly understanding that

my said husband by his Will disposes of all of our community property, including the share thereof which I am entitled to take and receive by law upon his death, as well as his own share or interest therein, being fully convinced in my own mind of the reasonableness and equity of said Will and the wisdom of its provisions, and in consideration of the provisions made for me therein, I hereby elect to and do accept, acquiesce in and consent to said Will and all of its provisions, including disposition at the death of my said husband of all of our community property thereunder, and hereby waive all claims to my share of any community property, which I may have at the time of the demise of my said husband, upon all of our community property.

By decree of distribution, filed on July 14, 1952, in the Superior Court of the State of California, in and for the County of Alameda, in proceeding No. 114,799, personal effects of Silas were bequeathed to Lillian and the residue of the estate of Silas, consisting of community property of Silas and Lillian, was distributed to the trustees, to be held in trust for the uses and purposes and in accordance with the trust provisions contained in the will.

Lillian died testate in Berkeley, California, on March 7, 1959, and her last will and testament was admitted to probate in the Superior Court of the State of California, in and for the County of Alameda, in proceeding No. 146,391 and letters testamentary were issued by said court on March 30, 1959.

The value of the corpus of Silas' testamentary trust estate at the date of death of Lillian was $196,622.56. Up to the date of her death, Lillian received from the testamentary trustees under the terms of the testamentary trust created by the will of Silas a total sum of $48,600, in cash.

It was stipulated that:

If, in disposing of this case, the Court deems it necessary to place a valuation on a life estate in favor of Lillian B. Gregory in the property of her husband, Silas B. Gregory, at the date of the creation of the testamentary trust, said value may be found by the Court to be in the amount of $11,926.96 ($60,635.31 × .1967).

A Federal estate tax return for Lillian's estate was filed on March 8, 1960, which elected the alternative valuation date. Excluding her interest, if any, in the relevant community property, Lillian's gross estate was valued on her estate tax return at $67,444.52. Said return contained the following statement:

* * * Our decedent exchanged her community share in return for a life interest in her husband's community, which she would not otherwise receive. This was an exchange for full and adequate consideration and therefore not includable in the estate for Federal Estate Tax purposes. * * *

The value at Lillian's death of the property transferred by her to the relevant trust was $102,420.69, for which transfer she had received $11,926.96 consideration. The election by Lillian to allow her share of the community property to pass into the trust created by

her predeceased husband, under which she received a life estate in the entire corpus, did not constitute a bona fide sale for an adequate and full consideration in money or money's worth.

Under the applicable California law, Lillian had a vested right to one-half[3] of the relevant community property free of any power of testamentary disposition by Silas. Sec. 161(a), Cal. Civ. Code; sec. 201, Cal. Prob. Code. It has been stipulated that Lillian had a present, existing, equal, and vested interest in the community property. For all material present purposes, Lillian owned her share of community property outright. She transferred said property to a trust which also consisted of Silas' portion of the community property. She received the right to income from the entire corpus of said trust for her life. We hold that her conveyance was a transfer with retained life estate within the scope of section 2036(a)(1).[4] See *Helvering v. Bullard*, 303 U.S. 297; *Estate of Daniel McNichol*, 29 T.C. 1179, affd. 265 F. 2d 667 (C.A. 3), certiorari denied 361 U.S. 829.

Petitioner asserts that the relevant transfer was a "bona fide sale for an adequate and full consideration in money or money's worth" and that it was therefore not within the purview of section 2036(a)(1). The type of consideration comprehended by "adequate and full consideration" is not the same as common law contractual consideration. *Commissioner v. Wemyss*, 324 U.S. 303, *Merrill v. Fahs*, 324 U.S. 308. Not only consideration, but "adequate and full"[5] consideration must be received. The statute excepts only those bona fide sales where the consideration received was of a comparable value which would be includable in the transferor's gross estate. *Estate of John M. Goetchius*, 17 T.C. 495; *Estate of Henry H. Scholler*, 44 B.T.A. 235. As we said in *Estate of John M. Goetchius, supra* at page 503:

there must be the kind of consideration which in an arm's length business transaction provides the transferor of property with the full value thereof, in exchange; and that if the consideration is not paid in money, property, or services, but is represented by some benefit, then the benefit must be of the

---

[3] Due to certain adjustments against Silas' one-half interest while his estate was in probate, it has been stipulated that the relevant trust consisted 52.09 percent of Lillian's community property and 47.91 percent of Silas' community property.

[4] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, * * *

[5] The words "adequate and full" were added in the 1926 Revenue Act. Before 1926, the term "fair" had been used. See, e.g., 1924 Revenue Act, sec. 302. The purpose of the amendment was "to narrow the class of deductible claims," *Taft v. Commissioner*, 304 U.S. 351, 356, or "to narrow the scope of tax exemptions," *Merrill v. Fahs*, 324 U.S. 308, 312.

*equivalent money value* in order to constitute the required "adequate and full consideration." * * *

See also *Mollenberg's Estate* v. *Commissioner*, 173 F. 2d 698 (C.A. 2), affirming a Memorandum Opinion of this Court; *Greene* v. *United States*, 237 F. 2d 848 (C.A. 7).

Lillian transferred outright property valued at $65,925.08 to a trust created by her predeceased husband. She received the right to income from $126,560.39, the corpus of the entire trust at the time of transfer. It is clear that retention of a life estate in one's own property cannot be consideration for a transfer. Sec. 2036(a)(1); *Helvering* v. *Bullard, supra*. Indeed, it was stated in Lillian's estate tax return that: "Our decedent exchanged her community share in return for a life interest in her husband's community." Hence, only her life estate in the portion of the trust corpus which her predeceased husband contributed was consideration. Her predeceased husband had contributed $60,635.31 to the testamentary trust. A life estate for a 77-year-old woman in $60,635.31 (the amount contributed by Silas) is stipulated to be $11,926.96, and is clearly not adequate and full consideration for the outright transfer of $65,925.08.

It should be noted that the trust instrument also provided that Lillian was to receive a minimum of $500 per month for as long as there was trust corpus; that the trust corpus was to be available to pay the expenses of her last illness and funeral in the event that she died insolvent; and that the trust corpus could be invaded in the discretion of the trustee if she was in need of funds for her "proper care, maintenance and support." The money value, if any, of these provisions is a question of fact in the context of Lillian's and the trust's economic position. See *Greene* v. *United States, supra; Mildred Irene Siegel*, 26 T.C. 743, affd. 250 F. 2d 339 (C.A. 9).

Viewing the record as a whole, we do not think that it was probable when this trust was created that invasion of the corpus would be required to provide the $500 minimum monthly payments or for payment of the last illness and funeral expenses. In any event, petitioner has not provided sufficient evidence on these matters to sustain its burden of proof. We find that these provisions did not have any value reducible to "money or money's worth."

The trustee power to invade corpus for "proper care, maintenance and support" was a power which the trustees had the right to use or not to use in their sole discretion. Considering Lillian's circumstances, it does not represent anything received by her that is capable of valuation. As we said in *Mildred Irene Siegel, supra* at page 749:

Under the terms * * * of the will, what was to be paid to petitioner was "such sum as in the *sole discretion* of the majority of said trustees they deem proper to maintain at least the same standard of living to which she has been accustomed in recent years, but in no event less than the sum of One Thousand

($1,000.00) Dollars per month," (emphasis supplied). We do not think it would be possible to construe this provision in the will as spelling out an annuity such as petitioner claims. The large income of the trust seems to us to make very improbable the invasion of principal in order to provide the minimum payments of $1,000 a month. Hence, it seems to us that we would not be justified in adding the value of the right of petitioner to have the principal invaded as one of the things which she received by what she gave up.

Further, petitioner has not sustained its burden of proving that the trustee power had any value for Lillian which was reducible to "money or money's worth." We find that this power did not have any value cognizable under section 2036(a).

Petitioner cites a recent case from the Northern District of Texas, *Juanita Tholl Frazer*, — F. Supp. — (N.D. Tex., Apr. 24, 1962), to support its position that Lillian entered into a "bona fide sale for an adequate and full consideration in money or money's worth." The *Frazer* opinion does not mention the age of the wife at the time of the election, and perhaps there was full and adequate consideration for the conveyance. The opinion does not cite any sections of the Internal Revenue Code and we do not know on what authority it relied. We are frankly uncertain as to what *Frazer* stands for, but we shall not follow it to whatever extent it conflicts with the decision in the case at bar.

In effect, Silas and Lillian arranged for the passage of their property to their heirs, retaining the income therefrom until the survivor, Lillian, was dead. As was said in *Olson* v. *Reisimer*, 271 F. 2d 623, 626 (C.A. 7):

> The joint will embodied * * * [a] careful plan for the ultimate disposition of their property * * *, retaining to themselves, and to the survivor of them, complete enjoyment thereof until the survivor died. It is not improper that they should establish and execute such a plan. Neither is it a hardship nor injustice that an estate tax be assessed * * *. Neither the ingenuity of the author of the plan nor its uniqueness can shield the transmission of this estate to the owners' sole heir at law from a federal estate tax. * * *

Petitioner further contends that section 2036 is inapplicable because Lillian derived a life estate in a trust corpus which consisted not only of her former property, but of property formerly owned by Silas too. We do not agree that this makes any difference. Lillian owned some property; she conveyed it to a trust; and she retained the income from that property for her life. The fact that she also received income from some other property goes only to the question of consideration under section 2043; it does not rebut the retained life estate under 2036. A retained life estate in one's own property in substance is all that the statute requires. See *Estate of A. Carl Borner*, 25 T.C. 584; *Claire Giannini Hoffman*, 2 T.C. 1160, affd. 148 F. 2d 285 (C.A. 9), certiorari denied 326 U.S. 730; *Estate of Henry H. Scholler*, *supra*; *Estate of George L. Shearer*, 17 T.C. 304. See also

*Allan S. Lehman et al., Executors*, 39 B.T.A. 17, affd. 109 F. 2d 99 (C.A. 2), certiorari denied 310 U.S. 637.

Since the relevant transfer was within the purview of section 2036, we must now decide whether said transfer was for a consideration comprehended by section 2043(a),[6] and, if so, the amount of said consideration.[7] Section 2043(a) provides in substance that, if property has been transferred for an inadequate consideration, the value of the transferred property at decedent's death shall be reduced by the consideration that was received.

Lillian transferred her portion of the relevant community property outright to the trust created by Silas. She received in return a life estate in the entire corpus. By dint of section 2036, the life estate in her retained property cannot be consideration for her transfer. She also received a life estate in that part of the trust which consisted of Silas' portion of the community property. Whether the latter life estate is section 2043(a) consideration is a first impression question for this Court in the estate tax context. We have, however, found such a transfer to be for consideration under section 1002 [8] in the gift tax context. In *Mildred Irene Siegel, supra*, a wife conveyed her portion of a marriage's community property to a trust. After said transfer, the trust consisted of the entire community property of the

---

[6] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

(a) IN GENERAL.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

This section is in substance the same as section 811(i) of the I.R.C. of 1939, which section was identical to the 1926 Revenue Act's section 302(i), where it originated.

[7] Sec. 20.2043-1 [Income Tax Regs.] Transfers for insufficient consideration.

(a) *In general*. The transfers, trusts, interests, rights or powers enumerated and described in sections 2035 through 2038 and section 2041 are not subject to the Federal estate tax if made, created, exercised, or relinquished in a transaction which constituted a bona fide sale for an adequate and full consideration in money or money's worth. To constitute a bona fide sale for an adequate and full consideration in money or money's worth, the transfer must have been made in good faith, and the price must have been an adequate and full equivalent reducible to a money value. If the price was less than such a consideration, only the excess of the fair market value of the property (as of the applicable valuation date) over the price received by the decedent is included in ascertaining the value of his gross estate.

[8] Internal Revenue Code of 1939:

SEC. 1002. TRANSFER FOR LESS THAN ADEQUATE AND FULL CONSIDERATION.

Where property is transferred for less than an adequate and full consideration in money or money's worth, then the amount by which the value of the property exceeded the value of the consideration shall, for the purpose of the tax imposed by this chapter, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year.

Gift tax cases are relevant because the estate tax and gift tax statutes are to be considered in *pari materia*. *Merrill* v. *Fahs, supra; Estate of Sanford* v. *Commissioner*, 308 U.S. 39. In discussing the words "adequate and full consideration" in the estate tax statute, the Supreme Court has stated that "there is every reason for giving the same words in the gift tax the same reading." *Merrill* v. *Fahs, supra* at 313.

marriage. The wife received a life estate in the income of the entire corpus. We determined the amount of the gift subject to the gift tax by deducting the value of the retained life estate in the entire corpus from the value of the wife's portion of the community property. This holding is consistent with the instant case, since it deems the retained life estate insufficient consideration for the transfer which reduces, but does not eliminate, the relevant tax. The only difference in the gift tax context is that a retention of a life estate in one's own property reduces the amount of gift, since only the remainder interest is being donated. But section 2036 explicitly prohibits a retained life estate in one's own property from serving as consideration for estate tax purposes, since the transferor has retained the benefit of the property and is in effect only transferring same at death. *Siegel* is therefore effective precedent for the instant case and the determination that Lillian's life estate in Silas' property is insufficient consideration under section 2043(a). Cf. *Zillah Mae Turman*, 35 T.C. 1123.

In *Estate of Lela Barry Vardell*, 35 T.C. 50, a husband purported to convey by will all the community property of a marriage, part of which was vested in his wife. The wife, on her election, received a life estate in the entire community. On the wife's subsequent death we properly held section 2036 applicable as to her portion of the community property, but we failed to apply section 2043(a). The Fifth Circuit remanded, sub nom. *Vardell's Estate* v. *Commissioner*, 307 F. 2d 688 (C.A. 5, 1962), holding that some amount of section 2043(a) consideration had been received by the wife because of her life estate in her husband's portion of the community property. We feel that such remand was proper.

Respondent does not contest that the life estate in Silas' property was consideration for Lillian's transfer.[9] There is dispute, however, as to the value of said life estate. Petitioner argues that the value of the life estate should be determined by adding up all the income Lillian received from it during her actual life.[10] He avers that *Nourse* v. *Riddell*, 143 F. Supp. 759 (S.D. Cal.) supports this contention. There are numerous factors which effectively distinguish *Nourse* from the instant case [11] and it is not controlling here.

[9] Although respondent denied the existence of any consideration in the statutory notice of deficiency, he conceded on brief that said life estate was consideration in the sum of $11,926.96.

[10] Petitioner actually contended that the income derived from the entire trust should be computed to find the value. This is clearly erroneous, as her life estate in her own property cannot be deemed consideration.

[11] In *Nourse* the transferor at 72 years of age believed that the income from her property was not sufficient to support her. She therefore entered into an arrangement with her two adult children whereby she contributed $164,513.79 to a trust and the children contributed $283,142.80. She was to receive the income from the trust for life and the children were to receive the remainder. The court, stating that value was a question of fact, found the transfer to be a bona fide sale for an adequate and full consideration.

Petitioner errs in contending that the consideration for the transfer should be determined by looking back from Lillian's death and adding up the amount of income she actually received. The relevant value of her life estate in Silas' property was the value at the time of transfer. See *Ithaca Trust Co.* v. *United States*, 279 U.S. 151; *D. G. McDonald Trust*, 19 T.C. 672, 690, affd. 225 F. 2d 621 (C.A. 8) ; *Estate of Robert Manning McKeon*, 25 T.C. 697; *Edith M. Bensel et al., Executors*, 36 B.T.A. 246, 253, affd. 100 F. 2d 639 (C.A. 3). As was said in *Ithaca Trust Co.* v. *United States, supra* at 155 :

the value of property at a given time depends upon the relative intensity of the social desire for it at that time, expressed in the money that it would bring in the market. * * * [I]t depends largely on more or less certain prophecies of the future; and the value is no less real at that time if later the prophecy turns out false than when it comes out true. * * * Tempting as it is to correct uncertain probabilities by the now certain fact, we are of opinion that it cannot be done, * * *

The value of said life estate at transfer is a question of fact which must be determined by ascertaining what the interest would bring in the market. *United States* v. *Provident Trust Co.*, 291 U.S. 272. The parties have stipulated that :

If, in disposing of this case, the Court deems it necessary to place a valuation on a life estate in favor of Lillian B. Gregory in the property of her husband, Silas B. Gregory, at the date of the creation of the testamentary trust, said value may be found by the Court to be in the amount of $11,926.96 ($60,635.31 × .1967).

This figure is consistent with the applicable life estate valuation regulations.[12] Petitioner avers that the actual facts should control. We agree that life expectancy tables are merely evidentiary, but later arising facts are relevant only if they were anticipatable at the time of the creation of the relevant future interest. *Ithaca Trust Co.* v. *United States, supra.* Factors showing a smaller life expectancy are relevant, as a willing buyer would not pay the price stated in the mortality tables. Cf. *Estate of Nicholas Murray Butler*, 18 T.C. 914; *Huntington National Bank*, 13 T.C. 760. But petitioner has not offered, and we have not found, any case which allowed a determination of life expectancy at the time of transfer greater than the computation which was stated in the applicable life expectancy tables. We need not decide whether it is ever possible to do so, since petitioner has not offered any proof that Lillian had such a greater life expectancy. Indeed, petitioner stipulated to a value consistent with said regulations. We find that the value of the relevant life estate

---

[12] Sec. 20.2031–7, Estate Tax Regs. When the net value of Silas' portion of the community property $60,635.31 is multiplied by the factor .19670, pursuant to said regulations, Table I, Column (3), a figure of $11,926.965477 is arrived at for the value of a life estate in a 77-year old person.

in Silas' property was $11,926.96. This is the total section 2043(a) consideration since, as previously noted, the other provisions of Silas' will did not have any value for Lillian reducible to money or money's worth.

The parties stipulated that the value of the entire corpus of the relevant trust at Lillian's death was $196,622.56, and that Lillian had contributed 52.09 percent of the property which passed into said trust. Although $102,420.69 [13] is thereby within the purview of section 2036, "only the excess" of this value "over the value of the consideration received therefor" is comprehendible in her gross estate by dint of section 2043. Since we have found $11,926.96 to be the value of the consideration received therefor, $90,493.73 is includable in Lillian's gross estate.

*Decision will be entered under Rule 50.*

---

[13] 52.09 percent of $196,622.56.