ESTATE OF FANNIE BOMASH, DECEASED, JULIAN BOMASH, ADMINISTRATOR, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5159–66.   Filed July 31, 1968.

*Bernard W. Shafer*, for the petitioner.
*Michael Pargament*, for the respondent.

OPINION

Scott, *Judge:* Respondent determined a deficiency in the estate tax of the Estate of Fannie Bomash, deceased, in the amount of $17,074.59. The issue for decision is whether decedent transferred her community property interest which had passed into a trust established under the will of her predeceased husband under such circumstances as to cause the fair market value thereof at the date of her death to be included in whole or in part in her taxable estate under section 2036, I.R.C. 1954, and, if so, the amount, if any, of consideration which she received for the transfer within the meaning of section 2043(a), I.R.C. 1954.

All of the facts have been stipulated and are found accordingly.

Fannie Bomash (hereinafter referred to as the decedent) died intestate, a resident of Los Angeles, Calif., on September 21, 1962.

Julian Bomash, decedent's son and petitioner herein, was appointed administrator of the Estate of Fannie Bomash, and, at the time of the filing of the petition in this case, resided in Los Angeles, Calif.

The estate tax return for the Estate of Fannie Bomash was filed with the district director of internal revenue at Los Angeles, Calif., on October 1, 1963, and the tax shown thereon to be due was paid.

Decedent was the widow of Louis Bomash, who died a resident of Los Angeles, Calif., on November 22, 1942. The will of Louis Bomash was admitted to probate on December 21, 1942. All of the property disposed of by the will of Louis Bomash was community property under the laws of the State of California, in which decedent Fannie Bomash had a present, existing, and equal interest.

The will of Louis Bomash dated September 16, 1941, provided in part as follows:

THIRD: I declare that all property in which at the date hereof I have any interest or which at this date stands in the name of myself or of myself and wife, other than property held in joint tenancy, if any, is our community property, and that it is my intention to dispose not only of my separate property, if any, and my share of the community property, but of the entire community estate.

\*        \*        \*        \*        \*        \*        \*

FIFTH: All of the rest, residue and remainder of my estate, of every kind and nature and wheresoever situated, over which I have testamentary control (hereinafter termed the "TRUST ESTATE"), to my son Julian Bomash, IN TRUST, to hold, manage and distribute as hereinafter provided.

(a) All the net income available for distribution shall be paid in monthly or other convenient installments to the persons and in the proportions as follows:

1. Fifty (50%) percent of the balance thereof to my beloved wife, Fannie, during her life.

2. Fifteen (15%) percent of said balance to my son, Julian, during the life of my wife, and thereafter or in the event my wife should die before the trust herein be established, Thirty (30%) percent thereof.

3. Fifteen (15%) percent of said balance to my daughter, Irma, during the life of my wife, and thereafter or in the event my wife should die before the trust herein be established, Thirty (30%) percent thereof.

4. Fifteen (15%) percent of said balance to my grandson, Arnold Donald, during the life of my wife, and thereafter or in the event my wife should die before the trust herein be established, Thirty (30%) percent thereof.

5. Five (5%) percent of said balance to my granddaughter, Gloria, during the life of my wife, and thereafter or in the event my wife should die before the trust herein be established, Ten (10%) percent thereof.

(b) Upon the death of my wife, or upon my granddaughter, Gloria, arriving at the age of thirty (30), which ever be later, unless the trust herein created shall be sooner terminated under the provisions herein contained, my said trustee shall apportion the trust estate, without being required to make a physical segregation thereof, except to the extent necessary to make distribution, into the following shares, and shall distribute the then remaining corpus of the trust, to the persons, and in the proportions as follows:

1. Thirty (30%) percent thereof, to my son Julian.

2. Thirty (30%) percent thereof, to my daughter Irma.

3. Thirty (30%) percent thereof, to my grandson Arnold Donald.

4. Ten (10%) percent thereof, to my granddaughter Gloria.

\* \* \* \* \* \* \*

SIXTH: To carry out the purposes of this trust, said Trustee is vested with the following powers and discretions, in addition to any now or hereafter conferred by law effecting the trust and the trust estate.

(a) To retain in trust, in the form in which received, for such time as he shall deem proper, without liability for any depreciation in value thereof or loss resulting therefrom, any securities, investments or other property, real or personal, received by said trustee upon distribution to him of the trust estate, whether or not the same be legal for the investment of trust funds in the State of California.

(b) To have full power to sell, assign, convey, exchange, transfer, mortgage, pledge or otherwise encumber, lease for terms within or beyond the term of this trust, convert, control and manage all of the property constituting the trust estate, both real and personal, upon such terms and conditions as in his absolute judgment may seem best and proper.

\* \* \* \* \* \* \*

(f) To have full power and authority, in his sole and absolute discretion and before the time herein provided for the termination of the trust, to sell any portion or all of my trust estate, and as he in his sole discretion may elect either to reinvest the proceeds of such sale, or to distribute the same to the persons, and in the proportions hereinabove provided for the distribution of the income of my trust estate.

Following the attestation clause on the will of Louis Bomash, is a

statement subscribed by decedent, on the same day that the will was executed, which reads as follows:

I, FANNIE BOMASH, hereby certify that I have read the foregoing Will of my husband, and fully understanding said Will and that my husband thereby disposes not only of his separate property, but also of our community property now owned or hereafter to be acquired, if any, including my half thereof, and being fully satisfied with its provisions, I hereby elect to accept and acquiesce in the provisions of said Will, waiving all claims to my share of any community property disposed of by said Will, but not including his property exempt from execution, my right to a family allowance out of his estate during the probate administration thereon. This election and waiver is not a grant or release of my right, title, interest or estate in any of our community property, now owned or hereafter to be acquired, and shall be effective and valid for any purpose only after the decease of my husband, and upon the conditions precedent that said Will shall be duly admitted to probate by a Court of competent jurisdiction, and that it shall not be successfully contested, or probate thereof revoked.

The will made no provision in the event that decedent, Fannie Bomash, should withdraw her acceptance of the will prior to Louis Bomash's death.

The property which passed into the trust created under the will of Louis Bomash had a total value of $86,290.44, of which $41,327.19 (or 47.89 percent) represented Louis' share of the community estate, and $44,963.25 (or 52.11 percent) represented decedent's share of the community estate. The difference between the two figures results from the deduction of specific legacies made by his will and administration expenses from Louis' share of the community property before its transfer to the trust.

The value of one-half of the corpus of the trust created under the will of Louis Bomash was $65,800.03 as of the date of decedent's death. Date of death valuation was elected on decedent's estate tax return.

A Federal estate tax return was filed for the Estate of Louis Bomash after his death in 1942 and the tax shown thereon to be due was paid. The total value of the entire community property of Louis and Fannie Bomash was included in the taxable estate of Louis Bomash in accordance with the provision of section 811, I.R.C. 1939, as amended by the Revenue Act of 1942, which was in effect at the date of the death of Louis Bomash and until 1948. This section as then effective provided that the gross estate of a decedent should include the entire interest of such decedent and his surviving spouse in community property except to the extent that a part thereof could be shown to come from the personal services or separate property of the surviving spouse.

In the estate tax return filed for the Estate of Fannie Bomash, petitioner included the accrued income which was due to decedent from the trust created in accordance with the will of Louis Bomash, but no portion of the corpus of the trust was included.

Respondent in his notice of deficiency determined that 50 percent of the corpus of the trust was includable in decedent's taxable estate with the explanation that within the meaning of section 2036, I.R.C. 1954,[1] decedent had retained an income interest in the trust created by her husband's will to which she had permitted her share of the community property to devolve.

Petitioner takes the position that all the community property of decedent and her husband, Louis Bomash, passed under her husband's will, and therefore the decedent made no transfer of property to which section 2036 could apply. Petitioner calls attention to section 201 of the California Probate Code,[2] which provides that upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse and the other one-half is subject to the testamentary disposition of the deceased, and in the absence of such testamentary disposition goes to the surviving spouse. Petitioner states that when the husband attempts to dispose of his wife's share of the community property she must elect between her community rights and her husband's gift, and if she elects to take under the will she affirms the testamentary transfer of her share of the community property, but that absent an election to take against the will the transfer is valid and the property passes under her husband's will. Petitioner cites *Estate of Selina J. Gray*, 14 T.C. 390 (1950), for the proposition that no conveyance or transfer from the wife is necessary to have title to the entire community pass under the will since the testamentary disposition by the husband of the wife's one-half of the community property is only voidable and not void. Petitioner recognizes that the *Estate of Selina J. Gray, supra,* dealt with community property acquired prior to 1927, and that under the laws of California the wife had an interest in such property more in the nature of an expectancy than a vested interest. However, he argues that the distinction with respect to California community property acquired prior to 1927 and California community property acquired after 1927 such as is involved herein does not require the conclusion that a wife's action in agreeing to the disposition of the total community property by her husband's will be considered a transfer by her of her property where the entire community property was included in the husband's estate under the provisions of section 811(e) (2), I.R.C. 1939, as amended by the Revenue Act of 1942. Petitioner argues that during the period from 1942 through 1948 when the

---

[1] All references are to the Internal Revenue Code of 1954 unless otherwise indicated.

[2] Cal. Prob. Code sec. 201 (West 1956). Title of surviving spouse; portion subject to testamentary disposition or succession.

Upon the death of either husband or wife, one-half of the community property belongs to the surviving spouse; the other half is subject to the testamentary disposition of the decedent, and in the absence thereof goes to the surviving spouse, subject to the provisions of sections 202 and 203 of this code.

provisions of section 811(e)(2), I.R.C. 1939, required all community property held by a decedent and surviving spouse to be included in the decedent's estate, except to the extent that it could be shown that the property had been received as, or derived from, compensation for personal services actually rendered by the surviving spouse or derived from separate property of the surviving spouse, the community property was deemed for the purpose of Federal taxes to be the property of the husband if he were the first of the spouses to die.

As petitioner recognizes, the case of *Estate of Selina J. Gray, supra*, specifically dealt with community property acquired prior to the amendment of the California Code in 1927 which amendment provided that the interests of the husband and wife in community property during continuance of the marriage was a present, existing and equal interest. In *Estate of Selina Gray, supra*, the distinction between community property acquired before and after 1927 was noted.

We have in a number of cases held that where a wife acquiesced in the disposition by her husband's will of all California community property, which community property had been acquired subsequent to 1927 and therefore was subject to the provisions of California law placing an existing and present interest in the property in the wife, such acquiescence or election constituted a transfer by the wife of her share of the community property. *Mildred Irene Siegel*, 26 T.C. 743 (1956), affd. 250 F. 2d 339 (C.A. 9, 1957), and *Estate of Lillian B. Gregory*, 39 T.C. 1012 (1963). In affirming our decision in *Mildred Irene Siegel, supra*, the United States Court of Appeals for the Ninth Circuit pointed out in *Commissioner* v. *Siegel*, 250 F. 2d 339 (C.A. 9, 1957), that since the wife's interest in community property under California law, as changed in 1927, is a vested interest, it never becomes a part of her husband's estate. The fact that at the time of Louis' death the applicable estate tax law required all of the community property to be included in his estate in no way affects the property interest of decedent in her share of the community property. This was pointed out by the Supreme Court in *Fernandez* v. *Wiener*, 326 U.S. 340 (1945). In that case the Supreme Court held the provisions of section 811(e)(2), I.R.C. 1939, requiring the inclusion of all community property in a decedent's estate, except to the extent that the property could be shown to have been acquired from compensation or separate assets of the surviving spouse, to be constitutional. *Fernandez* v. *Wiener, supra*, dealt with Louisiana community property. However, its reasoning is equally applicable to the estate of a decedent who had owned with his surviving spouse California community property acquired after 1927. In concluding that the provision was constitutional, the Supreme Court referred to its holdings in previous cases sustain-

ing the constitutionality of the inclusion in the estate of a decedent property held by him and his surviving spouse in joint tenancy at the date of his death. The Supreme Court stated that at the date of the husband's death his right of control over his wife's share of the community property ceased and that:

The cessation of these extensive powers of the husband, even though they were powers over property which he never "owned", and the establishment in the wife of new powers of control over her share, though it was always hers, furnish appropriate occasions for the imposition of an excise tax.

The fact that the entire community property of the decedent and her deceased husband was included in his estate for the purpose of computing the estate tax due by his estate was in no way related to his will disposing of the entire community property. In fact, his will was made prior to the enactment of the statute providing for the inclusion of all the community property in the estate of a deceased spouse except to the extent that it was attributable to services or separate property of the surviving spouse. As the law existed prior to 1942 and after 1948 the decedent's share of the community property would not have been includable in her husband's taxable estate. See *Pacific National Bank of Seattle, Executor*, 40 B.T.A. 128 (1939); *Coffman-Dobson Bank & Trust Co., Executor*, 20 B.T.A. 890 (1930); and *Bank of America Nat. Trust & Savings Ass'n.* v. *Rogan*, 33 F. Supp. 183 (S.D. Cal. 1940). Cf. *Wells Fargo Bank & Union Trust Co.* v. *United States*, 245 F. 2d 524 (C.A. 9, 1957). Therefore, we conclude that the fact that the decedent's share of the community property was included in the estate of her deceased husband Louis, for the purpose of computing his estate tax under the provisions of the Internal Revenue Code applicable to community property at the date of his death does not require the conclusion that her share of the community property passed under her husband's will. Decedent's share of the community property in 1942 passed by her transfer of that property in accordance with her endorsement on her husband's will. Since decedent retained some life income interest in the property she transferred, this property is includable in her taxable estate to the extent provided by section 2036. *Mildred Irene Siegel, supra*, and *Estate of Lillian B. Gregory, supra*.

Petitioner takes the position that if we conclude that decedent did make a transfer of her share of the community property in 1942, she retained an interest in only 50 percent of the income from the property transferred and therefore only one-half of the property she transferred, reduced by any consideration she received for the transfer which would be recognizable under section 2043(a), is includable in her taxable estate.

Respondent takes the position that although by the wording of Louis Bomash's will and decedent's statement agreeing thereto, decedent retained a 50-percent income interest for life in all the property included in the trust created by the will of Louis Bomash, in substance she retained the income from the total interest in one-half of the community property.[3]

Respondent cites no authority for his position nor have we found any. The property that composed the trust was intermingled, it was subject to broad powers of the trustee to deal with it, and it constituted a total trust estate and not divisible parts. It was one trust and not two trusts, and under the will of Louis Bomash, it was to be treated and managed as one trust. We, therefore, conclude that decedent by her transfer completely intermingled her property with the property passing under her deceased husband's will and since she had a 50-percent income interest in the whole trust she retained only 50 percent of the income from the property which she transferred to the trust. Since she retained only 50 percent of the income from the property she transferred to the trust, under the provisions of section 2036, and respondent's Estate Tax Regulations, sec. 20.2036–1, the corpus she transferred to the extent necessary to support the 50-percent income which was to go to decedent's children and grandchildren, is not includable in decedent's estate for Federal estate tax purposes. *Estate of Mary Fownes Tomec*, 40 T.C. 134 (1963).

Petitioner takes the position that if we conclude that decedent made a transfer which is subject to any extent to the provisions of section 2036, we should further conclude that she received consideration for this transfer which should be viewed in accordance with the provisions of section 2043(a)[4] to reduce the amount of her transfer includable in her estate. Petitioner, relying on *Commissioner* v. *Siegel, supra;*

---

[3] As pointed out in our Findings of Fact decedent's portion of the community property that went into the trust was actually over one-half of the total property in the trust. Respondent states that since decedent retained only an income interest in one-half of the total property of the trust, the excess amount which decedent transferred was in effect a gift by decedent to her children. Petitioner does not discuss the fact that since the decedent was given a 50-percent income interest in the total trust, the amount includable in her estate under his theory should be the fair market value at the date of decedent's death of one-half of 52.11 percent of the trust. We will therefore continue to discuss the problem as if the property transferred to the trust by decedent and by the will of Louis Bomash was each 50 percent of the total property in the trust, recognizing, however, that to the extent petitioner's theory is accepted, some adjustment should be made because of decedent's contribution to the trust being 52.11 percent thereof.

[4] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

(a) IN GENERAL.—If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

*Vardell's Estate* v. *Commissioner*, 307 F. 2d 688 (C.A. 5, 1962), modifying 35 T.C. 50 (1960); and *Estate of Lillian B. Gregory, supra,* contends that the transfer by the will of Louis Bomash to the decedent of a 50-percent income interest in his share of the community property constituted consideration within the meaning of section 2043(a) for her transfer to the trust of her one-half of the community property. Each of the cases cited by petitioner involved a situation where a wife permitted her share of the community property to be disposed of by her husband's will which provided that the wife was to receive a life interest in all the community property.[5]

In discussing whether the income interest which the wife acquired in that part of the trust which had consisted of her husband's portion of community property was consideration for her transfer of property to the trust, we stated in *Estate of Lillian B. Gregory, supra* at 1019:

> Lillian transferred her portion of the relevant community property outright to the trust created by Silas. She received in return a life estate in the entire corpus. By dint of section 2036, the life estate in her retained property cannot be consideration for her transfer. She also received a life estate in that part of the trust which consisted of Silas' portion of the community property. Whether the latter life estate is section 2043(a) consideration is a first impression question for this Court in the estate tax context. We have, however, found such a transfer to be for consideration under section 1002 [footnote omitted] in the gift tax context. In *Mildred Irene Siegel, supra,* [26 T.C. 743, affd. 250 F. 2d 339 (C.A. 9)] a wife conveyed her portion of a marriage's community property to a trust. After said transfer, the trust consisted of the entire community property of the marriage. The wife received a life estate in the income of the entire corpus. We determined the amount of the gift subject to the gift tax by deducting the value of the retained life estate in the entire corpus from the value of the wife's portion of the community property. This holding is consistent with the instant case, since it deems the retained life estate insufficient consideration for the transfer which reduces, but does not eliminate, the relevant tax. The only difference in the gift tax context is that a retention of a life estate in one's own property reduces the amount of gift, since only the remainder interest is being donated. But section 2036 explicitly prohibits a retained life estate in one's own property from serving as consideration for estate tax purposes, since the transferor has retained the benefit of the property and is in effect only transferring same at death. *Siegel* is therefore effective precedent for the instant case and the determination that Lillian's life estate in Silas' property is insufficient consideration under section 2043(a). Cf. *Zillah Mae Turman,* 35 T.C. 1123.

> In *Estate of Lela Barry Vardell,* 35 T.C. 50, a husband purported to convey by will all the community property of a marriage, part of which was vested in his wife. The wife, on her election, received a life estate in the entire community. On the wife's subsequent death we properly held section 2036 applicable as to her portion of the community property, but we failed to apply section 2043(a). The Fifth Circuit remanded, sub nom. *Vardell's Estate* v. *Commissioner,* 307 F. 2d

---

[5] In *Vardell's Estate* v. *Commissioner,* 307 F. 2d 688 (C.A. 5, 1962), modifying 35 T.C. 50 (1960), the wife was to receive a life estate in all the property so long as she remained a widow and retained the life interest in only one-half the property if she remarried. The other two cases involved testamentary trusts with the wife to receive the total income from all the community property for her life.

688 (C.A. 5, 1962), holding that some amount of section 2043(a) consideration had been received by the wife because of her life estate in her husband's portion of the community property. We feel that such remand was proper.

Respondent in the instant case argues that the 50-percent life income interest which decedent had in Louis Bomash's property was no consideration for decedent's transfer of her property to a trust in which she received only a 50-percent income interest and further argues that not only should there be no reduction under section 2043(a) but that under the rationale of *Lehman* v. *Commissioner*, 109 F. 2d 99 (C.A. 2, 1940), affirming 39 B.T.A. 17 (1939), the transfer by decedent and Louis Bomash should be viewed as reciprocal, thus requiring a conclusion that in substance decedent retained a 100-percent interest in the property she transferred to the trust. Respondent points to the following statement in *Lehman* v. *Commissioner*, *supra:*

While section 302(d) speaks of a decedent having made a transfer of property with enjoyment subject to change by exercise of power to alter, amend or revoke in the decedent, it clearly covers a case where the decedent by paying a quid pro quo has caused another to make a transfer of property with enjoyment subject to change by exercise of such power by the decedent. See 52 Harvard Law Review 1015. "A person who furnishes the consideration for the creation of a trust is the settlor, even though in form the trust is created by another." Scott on Trusts, section 156.3. X transfers property in trust for himself for life, with power of revocation. Y goes about it in a slightly different way; he pays cash or transfers property to another who in consideration of the cash or property sets aside or transfers securities in trust for Y for life, with power in Y to terminate the trust and take the principal. Does anyone suppose that X's estate is taxable under section 302(d) but that Y's estate is not? Here the transfer by the decedent's brother, having been paid for and brought about by the decedent, was in substance a "transfer" by the decedent, and the property so transferred formed part of his taxable estate by virtue of section 302(d), to the extent that the decedent had power "to alter, amend or revoke" the enjoyment of it, * * *

While there may have been a type of consideration which persuaded decedent to transfer her share of the community property to the trust created under her deceased husband's will, in our opinion there was no consideration within the meaning of section 2043(a). The facts show that decedent's contribution to the trust was over one-half of the corpus of the trust but she had only the right to one-half of the trust income. Seeing her children and grandchildren receive benefit from the trust might be considered a type of consideration to decedent, as would perhaps the fact that the total property would be managed as a unit and managed by a trustee. However, this is not the measurable type of consideration to which section 2043(a) has reference. In *Mildred Irene Sigel, supra* at 747, we pointed out that the taxpayer contended that she had made no gift since she was motivated to transfer her share of the community property to the trust by consideration of her own economic advantage in having income from the full trust which

would be managed as one unit and had further received consideration in that the remainder interest in the trust was for the benefit of her son. We held contrary to this contention of the taxpayer but recognized as consideration for her transfer the value of her retained income interest and the value of the life estate she received in the property transferred to the trust by her husband.

Decedent did receive a 50-percent income interest in the property transferred to the trust by the will of Louis Bomash. However, this income interest was not necessarily in consideration for her transfer of a greater amount of property to the trust than was transferred by her husband's will where she had only a 50-percent income interest in the entire trust corpus. Her receipt of 50 percent of the income from the property transferred to the trust by the will of Louis Bomash might well have been in consideration for her relinquishment of a 50-percent income interest in her property to the other trust beneficiaries.

Irrespective of the absence of evidence in the record to so indicate, petitioner contends that decedent's income rights from the portion of the corpus of the trust which had been Louis' share of the community property prior to his death was consideration for decedent's transfer of her property to the trust. If we were to accept petitioner's interpretation of what constitutes consideration under section 2043(a), it would not follow, as petitioner contends, that the reduction should be subtracted from one-half of the fair market value at the date of decedent's death of that portion of the trust corpus transferred to the trust by decedent with respect to which she retained an income interest for life. If decedent received consideration for the transfer of her share of the community property to the trust, the most favorable assumption to petitioner on the basis of the record is that such consideration was for the transfer of decedent's entire share of the community property to the trust. It would therefore follow that the fair market value at the date of decedent's death of 52.11 percent of the trust corpus should be reduced by the value of decedent's right to 50 percent of the income for her life from the portion of the trust which had been Louis' share of the community property. See *Zillah Mae Turman*, 35 T.C. 1123, 1128 (1961), as to consideration for purposes of gift tax and the discussion of the applicability of gift tax cases to cases involving estate tax in *Estate of Lillian B. Gregory*, *supra* at 1020.

Petitioner states that decedent was 66 years old in 1942 and that the value of decedent's right to 50 percent of the income from Louis' property which went into the trust under his will, computed in accordance with respondent's life expectancy tables, is $6,644.35. If the amount of $6,644.35 were to be considered to be consideration for de-

cedent's transfer to the trust, such amount subtracted from the fair market value at the date of decedent's death of 52.11 percent of the trust corpus, leaves an amount greater than the fair market value of the amount of corpus applicable to decedent's retained income interest at the date of her death, i.e., 26.06 percent of the fair market value of the total corpus of the trust at the date of decedent's death. Therefore there is no basis for a reduction in the amount includable in decedent's estate under the provision of section 2043(a). See the discussion of consideration for transfer of a wife's community property to a trust created by her deceased husband's will in *Whiteley* v. *United States*, 214 F. Supp. 489, 494–495 (W.D. Wash. 1963).

In our view the reciprocal trust theory of *Lehman* v. *Commissioner*, *supra*, is not applicable to the facts of this case. Had decedent and her husband transferred all their community property to an inter vivos trust, each retaining a 50-percent interest for life, it might be considered that the effect was the same as reciprocal trusts created by each for the other. This is a problem which we are not required to face in the instant case. See *Chase National Bank*, 25 T.C. 617 (1955), modified and remanded 259 F. 2d 231 (C.A. 5, 1958), and our discussion of that case in *Zillah Mae Turman*, *supra* at 1129.

Here the situation is more comparable to a husband and wife each contributing property to a trust for the benefit of their children but with the provision for 50 percent of the income to go to the wife only for life. The factual situation involved in *Claire Giannini Hoffman*, 2 T.C. 1160 (1943), affirmed sub nom. *Giannini* v. *Commissioner*, 148 F. 2d 285 (C.A. 9, 1945), relied on by respondent, distinguishes that case from the instant case. In *Claire Giannini Hoffman*, *supra*, the parents of three children placed their 70-percent interest in a family business in a trust for their three children and each of the three children put his 10-percent interest in that business into the trust. When one of the children died, the Commissioner determined that the value of 10-percent of the trust corpus was includable in his estate. We held for respondent on the theory that the 70-percent interest was a gift from the parents to the children without consideration and that since each child contributed an equal amount to the trust the substance of the situation was in effect the same as if reciprocal trusts had been established among the children. Where a husband sets up a testamentary trust with all or part of the income to go to his wife for her life if she survives him, and upon her death to others, her transfer of property to the trust is not reciprocally for his benefit. Her transfer does not become effective until his death. Under certain circumstances as heretofore discussed, we have held that the right to income for life from the property which belonged to her husband prior to his death may be

consideration for the wife's transfer of her property to the trust, but the concept of consideration, though in some ways related to, in other ways differs from the concept of reciprocal trusts.

We therefore conclude that there should be includable in petitioner's taxable estate the value at the date of decedent's death of 26.06 percent of the corpus of the trust created under the will of Louis Bomash to which she transferred her share of the community property.

*Decision will be entered under Rule 50.*