ESTATE OF ROBERT RODGER GLEN, DECEASED, CLAIRE HUNTINGTON GLEN, EXECUTRIX, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

MORGAN GUARANTY TRUST COMPANY OF NEW YORK, TRUSTEE UNDER INSTRUMENT CREATED BY ROBERT RODGER GLEN, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 365–62, 364–62.    Filed January 4, 1966.

*John A. Reed,* for the petitioners.
*Lionel Savadove,* for the respondent.
HOYT, *Judge:* Respondent determined a deficiency of $120,123.90

in the estate tax of the Estate of Robert Rodger Glen, deceased, and also asserted transferee liability in the same amount against Morgan Guaranty Trust Co. of New York as trustee of an inter vivos trust created in 1938 by Robert Rodger Glen, deceased.

Separate petitions were filed by the executrix of the decedent's estate and by Morgan Guaranty Trust Co. of New York (hereinafter sometimes referred to as Morgan Guaranty) as trustee and transferee. The two proceedings initiated thereby have been consolidated for trial, briefing, and opinion.

Pursuant to leave granted, each of the two petitions was amended twice and each of the two answers was amended once. The amended answers asserted an increased deficiency, and, inasmuch as this involved the assertion of new matter, the burden of proof thereof is on the respondent.

After abandonment and stipulated settlement of various minor issues raised by the petitions, the only issues remaining for decision are (1) whether certain property transferred in trust by decedent in 1938 with retained life estates is includable in decedent's gross estate under section 2036 of the Internal Revenue Code of 1954 [1] or whether all or any portion of said transfers was for adequate and full consideration so as to render section 2036 inapplicable, and (2) whether the value of an outstanding life income interest in one trust should be excluded from the gross estate.

The parties have stipulated that if a deficiency in estate tax is finally determined, petitioner Morgan Guaranty is liable as transferee to an extent determinable, as provided by law, under Rule 50. Various credits, deductions, and other adjustments to the gross estate dependent upon our resolution of the principal issues herein will be computed under Rule 50.

### FINDINGS OF FACT

Some of the facts have been stipulated. These facts and the exhibits attached thereto are adopted as our findings and incorporated herein by this reference. Some of these facts will be detailed hereinafter in our Findings of Fact.

The decedent, Robert Rodger Glen, died on February 18, 1957, a naturalized U.S. citizen and a resident of California. Decedent's Federal estate tax return was filed with the district director of internal revenue in Los Angeles.

Decedent was survived by Jane S. Durand, his former wife, by Claire Huntington Glen, his wife, and by his son, Robert Story Glen. The petitioner Claire Huntington Glen, decedent's wife, is the execu-

---

[1] Unless otherwise stated, all statutory references herein are to the Internal Revenue Code of 1954. References to the appropriate sections of earlier revenue codes will sometimes be incorporated by reference to the successor section in the 1954 Code.

trix of decedent's estate. The petitioner Morgan Guaranty is the sole trustee of an inter vivos trust created in 1938 by the decedent, which trust will hereinafter be referred to as the Jane S. Durand Trust.

The decedent was born in Scotland in 1892. After becoming an adult he entered the consular service of Great Britain and lived abroad in several different countries. In 1920 he married Jane Story, an American citizen, and in that same year their only child, Robert Story Glen, was born.

In late 1936 or early 1937 decedent and Jane Story Glen were having marital difficulties, and as a result Jane left their then home in France and went to New York. There she retained a law firm and determined to institute proceedings to terminate the marital relationship.

Jane Glen's New York counsel consulted other lawyers in Scotland and England as part of their effort to determine in which jurisdiction, among several possibilities, the contemplated divorce action could and should be brought. It was finally concluded that Jane Glen would obtain the most favorable settlement if a Scotch divorce could be obtained, as her property rights were greater under Scotch law than in any other jurisdiction which might be invoked. It was believed that decedent's then domicile was in Scotland and under Scotch law the wife was entitled to receive outright one-third of the husband's personal estate if a divorce was obtained there on the ground of the husband's infidelity.

Discussions were had between Jane Glen, her attorneys, and her mother, as a result of which it was decided that the interests of Jane and the son, Robert Story Glen (hereinafter sometimes referred to as Robert), would better be served if an arrangement could be made to have a substantial portion of decedent's property placed in two trusts. Jane Glen was interested in safeguarding the principal for her son and in assuring herself and her son of income for their living expenses.[2]

Jane's lawyers carried on extensive negotiations with the attorneys representing decedent. As a part of these negotiations a memorandum dated November 3, 1937, was sent by one of Jane's attorneys to decedent's New York counsel; it contained, *inter alia*, the following:

Mrs. G. has declared her intention to sue Major G. for absolute divorce.

She has been advised that it appears that the suit should be brought in the courts of Scotland.

---

[2] The parties have stipulated that if Jane S. Durand, who was residing in Europe at the time of trial, were available to testify in this case, her testimony would include the following:

"(a). Prior to my divorce from Robert Rodger Glen on July 14, 1938, my attorneys in Scotland had advised me that I would be entitled to one-third of all my husband's property on the date of our divorce. I accepted the (Jane S. Durand) Trust in order to safeguard the principal for my son and to assure us both of income for our living expenses. As a result of negotiations which preceded the divorce, Mr. Glen placed in trust an amount which was greater than I could have obtained outright as the result of the divorce proceeding."

*She has also been advised that under Scottish law a wife in whose favor a decree of absolute divorce is granted is entitled substantially to one-third of her spouse's property outright.* [Emphasis added.]

However, in order the better to assure her son's future, Mrs. G. would consider an approximately equivalent settlement in trust.

This is on the assumption that the Scottish law permits the parties to a divorce action to agree on a settlement of property questions other than that which the Court would decree if the matter were left to it.

If this assumption is correct, she would consider the following:

(1) Major G. to establish a trust fund of cash or good securities of the value of [$333,333] for the benefit of Mrs. G. and their son Robert; the principal of such fund to go to the issue of Robert upon the death of the survivor of Mrs. G. and Robert; the net income to be paid to Mrs. G. during her life, and after her death to Robert during his life, if he survives her, *provided*, that in case Mrs. G. remarries she shall thenceforth receive only $6,500 a year and the remainder of the net income shall be paid to Robert or his issue. * * *

(2) Further to protect the son, Major G. is to carry out his indicated intention of creating another trust fund for his own and his son's benefit, substantially as proposed in the draft Deed of Trust prepared by Messrs. Slaughter & May; this trust fund to amount to at least another one-third of his personalty.

After negotiations, the New York attorneys for husband and wife agreed that two-thirds of decedent's personal property, estimated to be approximately valued at $1 million, would be placed in trust for the benefit of Jane Glen, Robert Story Glen, and decedent. It was agreed that one-third would be placed in trust for Jane and Robert as outlined in the memorandum quoted above and one-third in a trust for decedent and his son as also outlined. It was estimated that Jane's income from the trust for her benefit would be about $13,000 per year, and one-half of that amount if she remarried, for life.

Counsel for the two spouses also agreed that until the trust for her benefit had been set up, the allowance which decedent had been making his wife of 1,000 pounds sterling [3] every 3 months for living expenses would be continued. This allowance, which had commenced at the time of their separation in late 1936 or early 1937, was in fact continued through the first 5 months of 1938. Jane S. Glen had no estate or property and was dependent on this allowance as her basic support for living expenses.

Toward the end of January of 1938, after New York counsel for both parties had agreed on a basis of settlement, Jane's lawyers instructed her solicitors in Scotland to commence the divorce action there. Counsel for both decedent and Jane went to Scotland in April of 1938 to consult directly with Scottish lawyers for both spouses about the documentary implementation of the agreement reached in New York. There they discovered that decedent had already set up a trust in Scotland for the principal benefit of Robert Story Glen and

---

[3] The parties have stipulated at trial that the applicable rate of exchange for converting British pounds into dollars in the period just prior to the divorce was $4.97 per pound.

his issue. Decedent had placed in this trust, hereinafter referred to as the Scotch trust, property having a total value in U.S. dollars of $171,780.30.

The Scotch trust had been created by decedent on March 31, 1938, the same day on which Jane's divorce action in Scotland was begun, without the knowledge of his wife or her attorneys. The trust agreement creating the Scotch trust recited that it had been created with the view of making provision for the son, Robert Story Glen, and his issue, and the parties have stipulated that it was established in contemplation of divorce.

Because decedent had established the Scotch trust independently of the settlement negotiated in New York, that plan was revised somewhat, reducing decedent's original obligations under the negotiated plan in order to make allowance to him for what he had already given up in establishing the Scotch trust. The details of the necessary adjustments to conform with the agreement of New York counsel were worked out between those counsel during their visit to Scotland.

On May 9, 1938, in contemplation of divorce and pursuant to the above-described negotiations and settlement between husband and wife through counsel, decedent created two trusts, hereinafter referred to as the Jane S. Durand Trust and the Robert Story Glen Trust, respectively. The actual establishment of the trusts was delayed until the settlement agreement (described as a discharge deed) was executed by Jane. Decedent executed the trusts but they were held in escrow and not effected until Jane's counsel returned to New York, obtained Jane's signature on the settlement, and then delivered it to Glen's New York counsel.

These two trusts provided as follows:

1. *Jane S. Durand Trust.*—Entire trust income to be paid to Jane S. Glen during her lifetime and thereafter to the decedent during his lifetime, subject to the proviso that upon the remarriage of Jane S. Glen the trust income up to but not exceeding $6,500 per year was to be paid to her and the balance thereof was to be paid to the decedent-settlor. Upon the decedent's death the income to which he was entitled was to be paid to his son, Robert Story Glen, during his lifetime. Upon the death of the survivor of the decedent, Jane S. Glen, and Robert Story Glen, the trust is to terminate and the principal to be distributed to the issue of Robert Story Glen.

2. *Robert Story Glen Trust.*—Trust income to be paid to decedent during his lifetime. Upon decedent's death, the son, Robert Story Glen, and the son's widow and issue are the sole beneficiaries. Jane S. Glen had no interest in this trust.

The original corpus of the Jane S. Durand Trust consisted of British securities and cash having an aggregate value in U.S. dollars

of $331,330. The original corpus of the Robert Story Glen Trust consisted of British securities and cash having an aggregate value in U.S. dollars of $155,995.11. At the decedent's death the aggregate gross values of the assets in these two trusts were $468,750 and $80,843.93, respectively.

The decedent retained no income or other interest in the Scotch trust; he reserved and retained a life income interest in the Robert Story Glen Trust and he retained a limited life income interest and the right to all of the income for life, if Jane predeceased him, in the Jane S. Durand Trust. It was because of his retained interests in the two trusts last above described that the respondent has determined their inclusion in decedent's estate. When the trusts were created, the value of the remainder interests transferred by decedent to the Robert Story Glen Trust was $68,460; the then value of the income and remainder interests transferred by decedent to the Jane S. Durand Trust was $190,131 (Jane's income interests) and $95,237 (remainders). The value of decedent's retained income interests in these two trusts was therefore—

| | |
|---|---|
| Robert Story Glen Trust | $87,535 |
| Jane S. Durand Trust | 45,962 |

Under date of May 10, 1938, in contemplation of divorce, decedent and Jane S. Glen executed a settlement agreement which contained, *inter alia*, the following provisions:

FIRST: Mrs. Glen shall out of the provision made for her by the Settlement or otherwise pay for all such board lodging clothes medical attendance and things whatsoever as she may hereafter require or obtain and shall in all respects support and maintain herself.

SECOND: Mrs. Glen shall be entitled to retain as her separate property all personal chattels and effects now in her possession or under her sole and absolute control.

THIRD: Mr. Glen shall be entitled to the sole custody and control of the Son during his minority and Mrs. Glen shall in no way interfere with the management or education of the Son.

FOURTH: Mrs. Glen may at all convenient and reasonable times have access to and communicate with the Son.

\* \* \* \* \* \* \*

SIXTH: Mrs. Glen hereby acknowledges that the provision made for her hereunder and under the Settlement shall be in absolute satisfaction of all claims whatsoever which she may have now or may at any future time have against Mr. Glen or his estate whether arising in connection with any matrimonial proceedings or against the estate and effects of Mr. Glen upon his death under whatsoever law any such claims may arise except that Mr. Glen agrees to pay Mrs. Glen's Counsel fees of Ten Thousand Dollars and disbursements estimated at Six Thousand Five Hundred Dollars and accordingly if Mr. Glen shall die at any time hereafter then his real and personal estate of which he shall not have disposed by Will or Codicil shall go and belong to the person or persons who would have become entitled thereto if Mrs. Glen had predeceased him and Mrs. Glen shall permit his Will to be proved or administration to his estate and effects to be taken out by such person or persons, and she hereby

discharges all claims of *jus relictae* or terce or other claims against Mr. Glen's estate wherever situated * * *

This agreement is the so-called discharge deed referred to above, executed by the parties before the two trusts here involved were released from escrow and effected.

On July 14, 1938, a decree of divorce was entered in the Court of Session, the Supreme Court of Scotland, divorcing decedent and Jane S. Glen on the ground of the husband's adultery. This decree contained one short paragraph and made no mention of any property or support rights or any property settlement agreement, the trusts having been duly created and the settlement agreement having been fully executed by the parties prior to that date.

The parties have agreed by stipulation filed herein that the law of Scotland as it existed during 1938 was to the following effect on the following points:

(a) Prior to the granting of a divorce, a husband had a legal obligation to support his wife.

(b) After the entry of the Scotch divorce decree, the husband had no further legal obligation to support his wife, whether or not he had made a property settlement with her prior to the entry of the divorce decree, or whether or not the Court made any order with respect to the division of property at or about the time of the entry of the divorce decree.

(c) Where a divorce was granted in favor of a wife with a child, the innocent wife was entitled to one-third of the husband's moveable estate as it existed at the time of the divorce decree, plus a life interest in one-third of the husband's immoveable property (realty). The life interest of the wife in one-third of the husband's realty might take the form of periodic income received by the wife in connection with this interest. The aforesaid right of the wife to a portion of the husband's property, both moveable and immoveable, upon divorce is in the nature of a capital payment from the husband's accumulated wealth rather than from his income.

(d) If a husband had no capital, the wife who had successfully obtained a divorce would normally take no property rights on divorce, nor did the law take into account the fact that the husband might be earning a substantial wage or salary.

(e) In a successful action by an innocent wife against a guilty husband for a legal separation, rather than a divorce, in absence of an agreement for support between the parties, the court may order the husband to pay to the wife a portion of his income as alimony, for the support and maintenance of herself and of any minor children. This alimony would be measured by the cost of maintaining the wife in the station in life to which husband belongs, based approximately on one-third of the husband's gross income. This alimony, aside from the portion payable on account of minor children, would normally be payable until the first to occur of the death of the husband, death of the wife, or entry of a divorce decree.

(f) The fact that the innocent wife had pending a suit for divorce in the Scotch courts would not bar her from attempting to obtain a legal separation rather than a divorce, if she chose to abandon the divorce action. In the event of legal separation, neither husband nor wife would be free to remarry as long as the other was alive.

(g) After entry of the decree of divorce on July 14, 1938, Robert Rodger Glen had no further legal obligation to support his former wife, Jane Story Glen, under the law of any jurisdiction.

(h) Upon the entry of the divorce decree by the Scotch court on July 14, 1938, Jane S. Durand did not become entitled to receive her capital interest under Scotch law in her husband's property, as set forth above, because she had already relinquished her right thereto; this was provided for in the Agreement between herself and her husband.

On or about July 18, 1938, the decedent married Claire Huntington, an American citizen, and thereafter took up residence in California. In 1951 he was naturalized an American citizen. On July 25, 1938, Jane S. Glen married Harry Durand and thereafter resumed her American citizenship. After her remarriage, Jane S. Glen was known as Jane S. Durand.

The net income of the Jane S. Durand Trust exceeded $6,500 each year from Jane's remarriage to the death of decedent, with the result that $6,500 per year was paid to Jane S. Durand and the balance of the net income was paid to decedent.

### FINDING OF ULTIMATE FACT

Jane S. Glen had an immediate right upon divorce in 1938 to an award of $333,333 from decedent's personal property. She also had a right to life income from one-third of his real estate. She transferred and surrendered these rights together with all of her other rights against Robert Rodger Glen arising out of the marital relationship, including claims of terce and *jus relictae*, in consideration for the establishment of three trusts by her husband for her benefit and for the benefit of her son. To the extent of at least $333,333 there was adequate consideration in money or money's worth for the three transfers in trust.

### OPINION

Respondent has included in the gross estate of decedent the value of the trust corpus of the Jane S. Durand Trust and the value of the trust corpus of the Robert Story Glen Trust. This action was taken pursuant to section 2036 of the 1954 Internal Revenue Code.[4] Section 2036 provides, generally, that even though property may have been transferred inter vivos, if the transferor retains a life estate (i.e., the beneficial enjoyment during his lifetime) in the property transferred,

---

[4] Sec. 2036 provides, in pertinent part, the following:

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property * * * to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property * * *

that property will still be included in his gross estate—as if no transfer had ever been made. Decedent had life interests in both the Jane S. Durand Trust and the Robert Story Glen Trust.

It is petitioner's contention that section 2036 does not cause the two trusts to be includable in decedent's estate because the transfer to those trusts was made "for an adequate and full consideration in money or money's worth." Alternatively, petitioners contend that if the transfer was not made for "adequate and full consideration," nonetheless, there was a substantial consideration received and under section 2043 (a) [5] the gross estate should not include the portion of the trusts for which consideration *was* received.

The two trusts here involved, along with the Scotch trust, were established by decedent in contemplation of divorce. The trust arrangements were arrived at as a result of bargaining between decedent and his former wife and were intended as a complete settlement of any claims the wife may have had arising out of the divorce. Therefore, petitioners argue that the relinquishment by the wife of her legal rights upon divorce constituted full and adequate consideration for the trusts. It is alleged that the wife relinquished the following rights:

1. Right to support payments.
2. Right to one-third of husband's property outright upon divorce.
3. Right to inherit from husband's estate upon death.

We disagree with petitioners' reasoning behind their assertions concerning the rights which were given up. The divorce here involved took place in Scotland. While the negotiations began some months before the Scotch divorce action was instituted, the settlement agreement was entered into and the trusts were established subsequent to the commencement of that action for divorce. Therefore, whatever rights Jane Glen had arising out of divorce were defined by the law of Scotland. The parties have stipulated as to the relevant law effective in Scotland in 1938. Under that law, as our findings indicate, a wife was entitled to one-third of her husband's personal property outright upon divorce; she was entitled to no support payments after divorce, and the stipulation as to the law of Scotland mentions nothing about the retention after divorce of any right to inherit anything from the former husband's estate when he dies. It is stipulated, however, that the law of Scotland did provide that a wife was also entitled to a life interest in one-third of the husband's real property,

---

[5] SEC. 2043. TRANSFERS FOR INSUFFICIENT CONSIDERATION.

(a) IN GENERAL.— If any one of the transfers, trusts, interests, rights, or powers enumerated and described in sections 2035 to 2038, inclusive, and section 2041 is made, created, exercised, or relinquished for a consideration in money or money's worth, but is not a bona fide sale for an adequate and full consideration in money or money's worth, there shall be included in the gross estate only the excess of the fair market value at the time of death of the property otherwise to be included on account of such transaction, over the value of the consideration received therefor by the decedent.

which might take the form of periodic income. Hence, the only rights on divorce which Jane Glen relinquished were her rights to one-third of decedent's personal property, which property was of a total value of $1 million at that time, and her right to a life interest in one-third of his realty, which was substantial, but the value of which is not disclosed by the record. (Decedent then owned a large home at Glasgow and two houses at Biarritz, France.)

The record contains evidence which indicates that Jane Glen could have brought the divorce proceeding in one or more jurisdictions other than Scotland [6] and that she and her attorneys considered other possibilities but chose Scotland as the jurisdiction which would yield her the greatest benefit. Petitioners apparently make the argument that even though Jane Glen had no postdivorce support rights under Scottish law, she had such rights under the laws of one or more of the other jurisdictions in which she might have commenced a divorce action, and the relinquishment of these rights is part of the consideration flowing to decedent. We reject this approach.

It may be true that in bargaining for the divorce settlement decedent sought release by his wife of any and all rights she might have had in any jurisdiction. However, if no settlement had been arrived at and the wife's claims against her divorced husband had been defined by law, the totality of these claims could be no greater than the rights granted in any *one* jurisdiction. Thus, the value received by decedent in the settlement agreement can be no greater than the release by the wife of her rights in one jurisdiction. Although the wife may release her claims in all jurisdictions, she could not have asserted all of those claims simultaneously.

A similar defect underlies petitioners' theory that the wife relinquished the right to support payments which she would have had if she had chosen not to sue for divorce but merely remain separated. While Jane Glen did relinquish both her right to support, which would exist if she remained married, and her right to one-third of decedent's property if she were to be divorced, since Jane could not have exercised *both* rights, but only one or the other, the consideration received by decedent is no more than the value of the greater of the two—not the sum of both. Thus, freedom from the *greater* of these two liabilities was all that decedent really received on entering the settlement agreement. The record herein indicates that the potential liability for one-third of his personal property was the greater of the two.

In the instant case the divorce proceeding had already begun in Scotland at the time of the settlement agreement. The record indicates that the divorce was sought in Scotland because that jurisdic-

---

[6] The record does not make clear what the other available jurisdictions were, but presumably one would have been in France, where the couple had a home.

tion provided Jane Glen with the most favorable legal rights upon divorce. Hence, we hold that the consideration flowing to decedent for his transfers under the 1938 settlement agreement could be no more than the release by Jane Glen of her rights upon divorce under Scotch law.

The principal issue in this case is whether the release by Jane Glen of her rights under Scotch law can be regarded as "consideration in money or money's worth" for purposes of section 2036. Respondent relies heavily on section 2043(b) of the 1954 Code, which provides as follows:

> (b) MARITAL RIGHTS NOT TREATED AS CONSIDERATION.—For purposes of this chapter, a relinquishment or promised relinquishment of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration "in money or money's worth."

At first blush this section appears to cover the instant case and prohibit the release by Jane Glen of her rights under Scotch law from serving as consideration. However, the proper interpretation and application of section 2043(b) in a case like the instant one requires consideration of all other relevant statutory provisions and a thorough analysis of prior relevant case law and statutory history. As we very recently observed in *Estate of Hubert Keller*, 44 T.C. 851 (1965), section 2043 (b) is difficult to apply despite its definite language because of both its legislative history and the treatment of it in court decisions and respondent's rulings.

The provision which is presently embodied in section 2043(b) was initially enacted as part of the Revenue Act of 1932. Its purpose was to eliminate a particular form of estate tax avoidance which involved the contractual conversion of a wife's dower (or other property rights she may have as *surviving spouse*) into a *deductible claim* against the gross estate. The following excerpt from the report of the Senate Finance Committee, S. Rept. No. 665, 72d Cong., 1st Sess., p. 50, 1939–1 C.B. (Part 2) 496, 532, with respect to the 1932 bill, makes quite clear the legislative intent:

> This amendment excludes, in determining "consideration in money or money's worth," the value of a relinquished, or a promised relinquishment of, dower, curtesy, or other marital rights in decedent's property. Section 302 (a) and (b) of the 1926 Act require the value of such an interest to be included in the gross estate, and, if its value may, in whole or in part, constitute a consideration for an otherwise taxable transfer (as has been held to be so), or an otherwise unallowable deduction from the gross estate, the effect produced amounts to a subversion of the legislative intent expressed in section 302 (a) and (b).
>
> For example, a decedent dies leaving an estate of $1,500,000 (after payment of all charges), and under the State law the surviving spouse is entitled to one-third, or $500,000, of which she can not be deprived by will without her consent. Under existing law the estate is entitled to no deduction on account of her

statutory rights, but, if she and decedent had entered into a contract by which she was to receive from his estate a stated sum in consideration of a waiver of her statutory rights, the amount due her under the contract might be held a deductible claim against the estate as having been contracted for an adequate and full consideration in money's worth, namely, the value of her waived marital rights.

The Code section was aimed at cases involving complicity between husband and wife who remain married and who are merely attempting to avoid estate tax; the situation in which a spouse relinquishes marital rights *pursuant to a divorce*, when husband and wife are most likely to be dealing at arm's length, was not mentioned in the committee report. It should also be noted that the section is made specifically applicable only to the estate tax and is not by its terms applicable to the gift tax.

In *Merrill* v. *Fahs*, 324 U.S. 308 (1945), the Supreme Court considered the question whether the release of marital rights should be deemed to constitute consideration in money or money's worth for gift tax purposes, the gift tax statute being silent on the point. The Court held that the gift tax and estate tax statutes should be interpreted "harmoniously," and the phrase "adequate and full consideration" should be deemed to have the same meaning in both statutes. Thus, in effect the Court held that the gift tax statute should be deemed to contain the same provision (now sec. 2043(b)) that Congress had inserted in the estate tax statute. That holding was later explained in the majority opinion in *Harris* v. *Commissioner*, 340 U.S. 106 (1950), as follows (pp. 107–108):

The federal estate tax and the federal gift tax, as held in a line of cases ending with *Commissioner* v. *Wemyss*, 324 U.S. 303, and *Merrill* v. *Fahs*, 324 U.S. 308, are construed *in pari materia*, since the purpose of the gift tax is to complement the estate tax by preventing tax-free depletion of the transferor's estate during his lifetime. Both the gift tax[1] and the estate tax[2] exclude transfers made for "an adequate and full consideration in money or money's worth." In the estate tax this requirement is limited to deductions for claims based upon "a promise or agreement";[3] but the consideration for the "promise or agreement" may not be the release of marital rights in the decedent's property.[4] In the *Wemyss* and *Merrill* cases the question was whether the gift tax was applicable to premarital property settlements. If the standards of the estate tax were to be applied *ex proprio vigore* in gift tax cases, those transfers would be taxable because there was a "promise or agreement" touching marital rights in property. We sustained that the tax, thus giving "adequate and full consideration in money or money's worth" the same meaning under both statutes insofar as premarital property settlements or agreements are concerned. [Footnotes omitted.]

While section 2043(b) served a very useful purpose in eliminating the kind of tax avoidance described in the committee report quoted above, its applicability to a spouse's release of various rights on divorce has raised serious questions. Although its language seems to apply to a release of rights on divorce, the evil which the section attacks is not often present in the usual divorce situation. Unlike the classic

2043(b) situation described above, in such a settlement agreement the parties are usually hostile and, more often than not, acting at arm's length, with the wife seeking as much of her husband's property as she can get and the husband striving to part with as little as he can under prevailing divorce law. In such a posture it is difficult to maintain that the husband does not receive any money's-worth consideration for what he may transfer to his wife under a property settlement agreement. If an agreement were not reached the husband would be faced with a liability to the divorced wife in an amount prescribed by the divorce court under the law of the jurisdiction granting the divorce. Hence, by entering into a settlement agreement he does truly receive consideration for what he gives up equivalent to the value of the release from what his liability would have been under local law.

The point here made was stated quite cogently by the First Circuit Court of Appeals in *McMurtry* v. *Commissioner*, 203 F. 2d 659 (C.A. 1, 1953) :

Property settlements in contemplation of divorce lack the familiar characteristics of a gift. They are usually the product of arm's-length bargaining negotiations between the parties or their representatives. If the parties cannot work out and submit to the divorce court the terms of an agreed property settlement—which they might naturally prefer to do if possible—the divorce court, if empowered by state law to do so, will make one for them.[1] Therefore in a real sense such settlement agreements are not "voluntary", nor in the donative spirit, but rather are made under the compulsion of the impending divorce decree, the marriage having gone on the rocks. The motive of such transfers is certainly not to deplete the estate *inter vivos*, so as to escape ultimate estate taxes upon death. * * * [Footnote omitted.]

See also *United States* v. *Davis*, 370 U.S. 65, fn. 6 (1962).

It is, we believe, largely because of an unexpressed recognition of the distinction just described that the Commissioner himself and courts, including the Supreme Court, have held section 2043(b) inapplicable in certain situations involving settlements pursuant to divorce.

In E.T. 19, 1946–2 C.B. 166, the Commissioner announced that for both estate and gift tax purposes he would consider the relinquishment of a right to support by a spouse pursuant to legal separation agreements or divorce decrees as an adequate and full consideration to the extent of the value of the right to support. This ruling points out that a transfer in consideration of the relinquishment of a right to support does not deplete the transferor's estate since the transferor would have to expend the amount transferred to discharge the obligation of support if the transfer were not made. Thus, to the extent that a settlement agreement pursuant to divorce involves the wife's relinquishment of support rights, there is consideration received for the transfer of property to the wife under the agreement.

In *Harris* v. *Commissioner*, *supra*, the Supreme Court declined to carry over the principle of the predecessor of section 2043(b) in a gift

tax case involving another divorce agreement situation. There it was held that when an agreement settling marital property rights is *incorporated into the divorce decree* there is then deemed to be consideration for the transfers to the wife under the agreement. This is on the theory that once the divorce decree is issued, transfers made thereafter are not voluntary transfers pursuant to the promise or agreement, but constitute involuntary transfers pursuant to the judicial decree.

The result of *Harris*, a gift tax case, was further extended by the Commissioner in Rev. Rul. 60–160, 1960–1 C.B. 374. In this ruling E.T. 19 was modified. The rationale of *Harris* was applied to section 2043(b), and the estate tax provisions were interpreted so as to conform with the gift tax result. Furthermore, this Court in *Estate of Myles C. Watson*, 20 T.C. 386 (1953), affd. 216 F. 2d 941 (C.A. 2, 1954), held that where a separation agreement was incorporated in a divorce decree, the divorced wife's claim against the decedent's estate was founded on the divorce decree rather than the agreement, and was properly deductible from the gross estate.

Remarks of the Supreme Court from as recently as 1962 clearly reflect the High Court's view that in a very real sense the taxpayer receives something of value when he makes a transfer in exchange for release of a spouse's rights at the time of divorce. Although *United States* v. *Davis, supra,* was an income tax case, the following language from footnote 6 therein is, nonetheless, highly pertinent here:

Any suggestion that the transaction in question was a gift is completely unrealistic. Property transferred pursuant to a negotiated settlement in return for the release of admittedly valuable rights is not a gift in any sense of the term. * * *

Other courts participated in the course of events which has gradually but unmistakably eroded section 2043(b)'s applicability in the divorce situation. In *Commissioner* v. *Mesta*, 123 F. 2d 986 (C.A. 3, 1941), another income tax case, reversing 42 B.T.A. 933 (1940), the court in discussing a divorce settlement observed:

We think that we may make the practical assumption that a man who spends money or gives property of a fixed value for an unliquidated claim is getting his money's worth.[7]

In *Beecher* v. *United States*, 280 F. 2d 202, 204 (C.A. 3, 1960), a subsequent estate tax case involving the estate of John R. Geary (the taxpayer who was petitioner in the gift tax case cited in the footnote), it was *stipulated* that the transfers from decedent to his two sons made pursuant to a divorce settlement with his wife were made for adequate

---

[7] Not long thereafter in *John R. Geary*, a Memorandum Opinion of this Court, filed May 31, 1943, we quoted that excerpt from the *Mesta* opinion with approval and held that there was full and adequate consideration in money or money's worth for transfers in trust for the benefit of the wife and two of the taxpayer's sons in a divorce settlement, even though there was no divorce decree ordering the transfers. We concluded that no gift tax was due on the transfers in trust.

and full consideration in money or money's worth.   See also *Past* v. *United States*, an unreported case (S.D. Cal. 1963, 13 A.F.T.R. 2d 1800, 63–2 U.S.T.C. par. 12,189), revd. 347 F. 2d 7 (C.A. 9, 1965).

In action subsequent to *Harris* v. *Commissioner*, *supra*, Congress gave approval to the position adopted by the courts and extended the *Harris* principle of recognizing the reality of consideration in divorce settlements by adding a new section to the gift tax law.   This new legislation also recognizes that money's worth consideration in fact does flow to a husband in a property settlement incident to divorce, whether or not the transfers result from the divorce decree itself or from the agreement of the parties settling their marital rights.   This new provision, section 2516, provides as follows:

SEC. 2516. CERTAIN PROPERTY SETTLEMENTS.

Where husband and wife enter into a written agreement relative to their marital and property rights and divorce occurs within 2 years thereafter (whether or not such agreement is approved by the divorce decree), any transfers of property or interests in property made pursuant to such agreement—

(1) to either spouse in settlement of his or her marital or property rights, or

(2) to provide a reasonable allowance for the support of issue of the marriage during minority,

shall be deemed to be transfers made for a full and adequate consideration in money or money's worth.

The reasons set forth for the enactment of the section explain the congressional intention and concern.

The following pertinent paragraphs from the report of the Senate Finance Committee, S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 128, 481, indicate the intent of Congress in enacting this section:

Under present law property settlements between spouses are not regarded as taxable gifts if the property settlement is incorporated in the decree of divorce. However, the gift-tax status under present law of settlements not incorporated in the decree of divorce is uncertain.

Both versions of the bill provide that property settlements involving transfers between spouses are not to constitute taxable gifts if followed by a divorce within a reasonable length of time.

\*          \*          \*          \*          \*          \*          \*

Under present law there is substantial uncertainty as to whether a gift may result from transfers to the wife under a property settlement incident to a divorce.   The House bill provides that where transfers are made pursuant to a separation agreement and divorce occurs within a reasonable time thereafter, such transfers as are made to a spouse in settlement of his or her marital or property rights or to provide a reasonable allowance for the support of issue of the marriage during minority will be deemed to be transfers made for a full and adequate consideration in money or money's worth.

Your committee believes that the term "reasonable time" appearing in the House bill is too indefinite and will create uncertainty as to the application of the section.   Accordingly, this section has been revised to indicate that transfers of property by husband and wife pursuant to a written agreement relative

to their marital and property rights or to provide a reasonable allowance for the support of the issue of the spouses during minority will be exempt from gift tax provided that divorce occurs within 2 years after entering into the agreement.

The committee report, in essence, recognizes the illogic in the distinction in tax treatment for gift tax purposes based upon whether or not the agreement is incorporated into the divorce decree.

As a matter of practical reality there would generally appear to be money's-worth consideration received for property transferred pursuant to an arm's-length property settlement agreement reached in connection with divorce. However, while there are still complications imposed by section 2043(b), a careful analysis of the history of developments in this area, as outlined hereinabove, reveals a marked trend toward recognition of consideration in the divorce situation in both the gift and estate tax contexts. Inherent in this trend is an attempt to free from the shackles of section 2043(b) transfers pursuant to an arm's-length divorce settlement, which transfers are clearly not of the type which section 2043(b) was designed to brand as being without consideration.

As we have already mentioned, in E.T. 19 the Commissioner held 2043(b) inapplicable to the release by a divorced spouse of rights to support for both gift and estate tax purposes. In *Harris* v. *Commissioner, supra,* the Supreme Court held 2043(b) inapplicable in a gift tax case when the property settlement agreement is pursuant to divorce and incorporated into the divorce decree. The Commissioner in Rev. Rul. 60–160, *supra,* then modified his position in E.T. 19, *supra,* and extended this doctrine of the "decretal obligation" rule to the estate tax area. Finally, section 2516 was enacted, eliminating the restrictions of 2043(b) from the gift tax in the divorce situation, where a voluntary property settlement agreement is reached and a divorce follows within 2 years.

It is by now almost axiomatic that the estate tax and the gift tax are *in pari materia* and must be construed together. *Harris* v. *Commissioner, supra; Merrill* v. *Fahs, supra; Estate of Sanford* v. *Commissioner,* 308 U.S. 39 (1939). In *Merrill* v. *Fahs, supra,* this principle was stated, and section 2043(b) was incorporated directly into the gift tax even though it appeared only in the sections devoted to the estate tax and by its terms it is applicable only to the estate tax. It was held that the phrase "adequate and full consideration" should have the same meaning in both the estate and the gift tax sections in which it appears. The enactment by Congress of section 2516 indicates an intent to view divorce settlements as an exception to the restrictions of section 2043(b), at least in the gift tax area.

Respondent argues that section 2516 cannot apply to the estate tax because of a direct conflict with the language of section 2043(b) which plainly states that relinquishment of "dower or curtesy * * * or of

other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.' " Petitioner on the other hand argues that section 2516 should be read into and applied by us in the estate tax area.

Petitioner has not convinced us that this is a proper case for the *in pari materia* application sought even if we were convinced that section 2516 of the gift tax should apply in an estate tax case. Section 2516 applies only to transfers to a spouse in settlement of marital or property rights or to provide a reasonable allowance for support of issue of the marriage during minority. As our findings of fact indicate, the greater portion of the transfers here involved were neither to a spouse nor to provide support for issue of the marriage during minority.

We do not deem it necessary or desirable here to pass on these arguments for a proper determination of the issues presented, nor do we view the facts of this case as presenting issues which can be decided by our views on the respective contentions of the parties.[8]

In light of the obvious limited congressional intent behind the enactment of 2043(b) it is reasonable and proper to interpret the phrase "other marital rights in the decedent's property or estate" as limited in meaning to rights in property similar to dower or curtesy which accrue to a surviving spouse upon the decedent's death. Thus, the phrase does not encompass all immediately enforceable rights arising out of a marital breakup accruing upon divorce.

The section lists three groups of rights:

    (a) Dower or curtesy.
    (b) A statutory estate created in lieu of dower or curtesy.
    (c) Other marital rights in decedent's property or estate.

It is clear that the principal target is dower and curtesy or substitutes therefor under local law. Rather than read as intending to cover interests which may come into possession prior to decedent's death (such as rights arising upon divorce), the third phrase, "other marital rights in the decedent's property or estate," should be read as no more than a backstop, or a catchall, designed to cover any interest in a surviving spouse which by reason of some technical definitional peculiarity in local law might not fit the mold of the first two phrases. See the dissenting opinion in *Meyer's Estate* v. *Commissioner*, 110 F. 2d 367, 369 (C.A. 2, 1940), certiorari denied 310 U.S. 651 (1940), in which Judge Learned Hand took this approach to interpreting the phrase "marital rights in the decedent's property or estate."[9]

---

[8] Only a limited income interest in one trust was transferred to Jane and no contention is made that the transfers for Robert's benefit (he was 17 at the time and given into decedent's custody) were to provide reasonable support during his minority.

[9] It is to be noted that Judge Hand's dissenting view that support rights were not intended to be covered by the predecessor of 2043(b) was eventually accepted and adopted by the Commissioner. E.T. 19, 1946–2 C.B. 166.

For example, since dower and curtesy are commonly associated only with real property, if under State law a surviving spouse is entitled to some interest in decedent's personalty, this interest is of a type which the third phrase was designed to cover—since it would not be covered by the first two phrases. Statutory interpretation of section 2043(b) is an almost classic case for application of the doctrine *ejusdem generis*.

This view is supported by a careful study of the above-quoted committee report with respect to enactment of the predecessor of section 2043(b). The example used in the report to illustrate the tax avoidance which the section was designed to curb involves the relinquishment by a wife of her rights, *as surviving spouse*, to one-third of the husband's estate. These rights are referred to as "marital rights"— not as dower or curtesy or any other term. Rather than refer to the surviving spouse's right to one-third of the decedent's estate as "dower," or any other such term, which might have as many legal meanings as there are common law jurisdictions, the drafters used the phrase "marital rights," a phrase which by virtue of its generality would probably cover all rights in surviving spouses no matter what they are called under any local law. It is far more reasonable to suppose that the term "marital rights" was used for this purpose rather than used with an unexpressed intention to extend the coverage of 2043(b) beyond the *surviving spouse* situation described in the committee report.

The clear and obvious motive behind enactment of section 2043(b) impels this interpretation. The statute was designed to prevent a person from contracting with his spouse to pay the surviving spouse a certain amount at death in exchange for release of whatever rights the spouse would otherwise have in his estate and thereby convert nondeductible claims into deductible contractual claims against the estate. See *Estate of Myles C. Watson, supra.*

We recognize that in some unusual cases the parties will not be dealing at arm's length at the divorce bargaining table and the husband may have a donative intent in transferring more than he may have been liable for under local law. However, the presence of such facts may be litigated on a case-by-case basis. The possibility of an exceptional case arising is no reason for refusing to interpret section 2043(b) so as to recognize the reality that husband and wife, in arriving at a property settlement in divorce, are usually dealing at arm's length and that valuable rights are transferred. See *Rosenthal* v. *Commissioner*, 205 F. 2d 505 (C.A. 2, 1953), affirming on this point 17 T.C. 1047 (1951); and *Karl T. Wiedemann*, 26 T.C. 565 (1956), in both of which the gift tax was imposed even though the provisions for transfers to adult children were incorporated into the divorce

decree. See also *Roland M. Hooker*, 10 T.C. 388 (1948), affd. 174 F. 2d 863 (C.A. 5, 1949).

We find further support for the above position in the published views of the Commissioner. E.T. 19, *supra*, after quoting the committee report on the predecessor of 2043(b), continues as follows:

The gift tax is supplementary to the estate tax. It taxes, to a large extent, transfers *inter vivos* which deplete the estate that the donor would otherwise leave at death. Taxability, therefore, under the gift tax of other than commercial transactions is said to be determined by, and to the extent of, absence of financial benefit to the transferor. (*Commissioner* v. *Wemyss*, supra; section 1002, supra.)

Under a decree of divorce or legal separation a husband's duty to support a divorced wife (alimony) customarily lasts only during the joint lives of the parties or until the divorced wife remarries. (Vernier, "American Family Laws," Volume II, 1932 and Supp. 1938.) The fulfillment, therefore, of this obligation by the husband merely amounts to the liquidation of a presently existing obligation, the satisfaction of which does not have the effect of diminishing or depleting the husband's estate to any greater extent than the payment of other existing legal obligations. On the other hand, a transfer to a wife under such a decree in settlement of inheritance rights is a present transfer of what would otherwise constitute a major portion of the husband's estate on death.

The final sentence of this long outstanding ruling speaks of a transfer in settlement of "inheritance rights," presumably meaning rights which would not come into possession until the husband's death. In upholding the Commissioner's distinction between support rights and other marital rights announced in E.T. 19, *supra*, at least one court has described the distinction as one between support and *"inheritance rights* such as dower or curtesy or a statutory estate created in lieu of dower or curtesy." *McMurtry* v. *Commissioner, supra*.

What, however, of rights, such as in the instant case, to some portion of the husband's property immediately upon divorce? Clearly, in theory and under the above-quoted rationale of E.T. 19, section 2043(b) is inapplicable. If a wife has, under State law, a right to some portion of her husband's property immediately upon divorce, satisfaction of such a right in a property settlement agreement is no different from satisfaction of support rights pursuant to such an agreement. The husband is merely liquidating the obligation which he would have to his divorced wife *immediately upon divorce*—not upon his death. The satisfaction of such an obligation is *not* "a present transfer of what would otherwise constitute a major portion of the husband's estate on death," and it "does not have the effect of diminishing or depleting the husband's estate to any greater extent than the payment of other existing legal obligations."

This Court has already in effect held the predecessor of 2043(b) inapplicable in a situation such as the instant one in *Edward B. McLean*, 11 T.C. 543 (1948) (reviewed by the Court; two dissents). There we held that payments by a husband to his divorced wife beyond

his obligation of support were not gifts when made pursuant to an agreement under which the wife released "immediately enforceable claims" against his property. We stated as follows at page 549:

We can not construe those holdings [*Commissioner* v. *Wemyss* and *Merrill* v. *Fahs*] as covering a situation in which divorce has converted the wife's marital rights into immediately enforceable claims. By making the agreement under the circumstances here shown, petitioner was not gratuitously diminishing his taxable estate, but, on the contrary, was defending it by making the most advantageous settlement possible of the wife's claims against him. * * * For reasons not clear to us, E.T. 19 excepts support and maintenance from marital rights the release of which does not constitute full and adequate consideration. We deem the ruling invalid in so far as it does not also except transfers made to settle presently enforceable claims.

Based upon all of the above, and particularly upon the statutory history underlying section 2043(b), and our previous holding in *Edward B. McLean, supra,* we conclude that section 2043(b) should be limited in its application to the release of rights which accrue to a *surviving spouse* upon the decedent's death, i.e., dower, curtesy, or similar rights in the property or estate of a deceased spouse. Section 2043(b) is not applicable to the relinquishment of a presently enforceable claim to an outright portion of a spouse's property upon divorce. *Edward B. McLean, supra.*

Respondent relies on the recent case of *United States* v. *Past,* 347 F. 2d 7 (C.A. 9, 1965), as authority for the proposition that release of rights arising on divorce in an arm's-length settlement agreement may not, as a matter of law, be deemed adequate and full consideration. While on its surface the *Past* case may appear to stand for that proposition, we think that this appearance fades upon close examination and that the approach and the result herein are not inconsistent with *Past.*

The following excerpt from *United States* v. *Past, supra* at 12, is significant:

The tax court [in *Estate of Bryan S. McCoy, Sr.,* a Memorandum Opinion of this Court] seemed to assume that because the transfers were part of an arm's length transaction settling both the marital and business affairs of the spouses that, as a matter of law, there was sufficient consideration for the purposes of section 2036. We do not agree.[2] The fact alone that the transfer into the trust was part of a property settlement agreement incident to a divorce is not sufficient to make the transfer of the decedent one for an adequate and full consideration within the meaning of section 2036. The value of what the decedent received under the trust must be measured against the value of the property she transferred to the trust. See Estate of Gregory, 39 T.C. 1012 (1963). [Footnote omitted.]

We have *not* in the instant case assumed that because the transfers were part of an arm's-length transaction settling marital affairs there was sufficient consideration as a matter of law, and we have recently rejected this argument in *Estate of Hubert Keller, supra.* To the

contrary, here we have also recognized that the existence of the divorce situation does not as a matter of law necessarily indicate arm's-length bargaining, or adequate and full consideration, and that a donative intent might be present even in arriving at a divorce agreement.

While the *Past* case *does* say that release of rights in a divorce agreement is not to be deemed adequate and full consideration, as a matter of law, it *does not* say that the release of such rights may never be regarded as partial or full consideration if the facts so indicate.[10] Just as the court did in *Past*, we have measured the value of what the decedent received as a result of the settlement agreement against the property he transferred to the three trusts, and to the extent that the evidence before us does not establish a transfer for measurable consideration in money or money's worth we have rejected petitioners' contentions.

In presenting various arguments on brief, petitioners take the position that in determining whether there was a *quid pro quo* exchange (i.e., in comparing the value of what the husband gave up with the value of what he received) the amount of what he gave up should be deemed to be the total of the property transferred to the trusts *less* the present value of *his* life interests retained. This is no different from contending that the value of the retained life estate should be regarded as part of the consideration received for the transfer. This approach has been rejected in applying section 2036. *United States* v. *Past, supra; Estate of Lillian B. Gregory*, 39 T.C. 1012 (1963). We reject it here.

The problems in the instant case are not magically solved by our holding that section 2043(b) does not apply to the release by Jane of her right to an outright portion of her husband's property upon divorce. Although Jane received a limited life interest in one trust, the principal beneficiary of the three trusts created by decedent was the son, Robert—not the spouse, Jane. Thus, the question arises whether the transfers are any the less for consideration, under our holding above, when made to some third party other than the spouse who relinquishes the divorce rights.[11]

The Jane S. Durand Trust was to the wife for life (income limited to $6,500 upon remarriage), then to the husband for life, then to the son for life, remainder to the issue of the son. The Robert Story Glen Trust was to the husband for life, remainder to the son for life with power of appointment. Thus, the wife had no interest in the Robert Story Glen Trust, and only a limited interest in the Jane S. Durand Trust. The only portion of the property transferred into the trusts

[10] It should be noted that in reversing the District Court, the Ninth Circuit in *Past* nowhere relied upon sec. 2043(b) and nowhere indicated that release of a right to a portion of the spouse's property outright upon divorce cannot serve as consideration.

[11] Under a strict construction of sec. 2516, applicable to the gift tax, that section applies only to transfers to the spouse or for the purpose of providing reasonable support during minority of issue of the marriage.

which went directly to and for the benefit of Jane is the interest which she received in the Jane S. Durand Trust. The present value, as of the creation of the trust, of Jane's income interest therein was $190,131, computed as detailed in the margin.[12] This was all she obtained directly for herself in the settlement for which she surrendered her rights to obtain outright at least $333,000. The other transfers which she bargained for and obtained as part of the whole settlement were for her son's benefit.

The fact that divorce settlement transfers are made to persons other than the divorced spouse or minor children does not mean that they are not made for consideration. Such transfers are made for consideration if made at the insistence of the wife in complete or partial satisfaction of her rights on divorce and discharge of those rights, valuable in money or money's worth, is obtained by the husband. See *Roland M. Hooker*, 10 T.C. 388, 393 (1948), affd. 174 F. 2d 863 (C.A. 5, 1949). Compare *Robert Lehman*, 17 T.C. 652 (1951), in which we held that payments by a husband to his mother-in-law, bargained for and obtained by a wife as part of a divorce settlement, were alimony payments to the wife, deductible by him, and the companion case, *Lehman v. Commissioner*, 234 F. 2d 958 (C.A. 2, 1956), affirming a Memorandum Opinion of this Court, certiorari denied 352 U.S. 926 (1956), in which said payments were held taxable to the wife as alimony paid to her. It should make no difference whether the property is transferred to the wife herself or to some third person designated by the wife; there is still consideration flowing to the husband by reason of his satisfaction of the wife's present rights against him.[13]

Nonetheless, such transfers to third persons should be subject to close scrutiny, especially when the third person is an adult child or other natural object of the transferor's bounty. While a divorced husband may have no desire to give the wife anything more than she would be entitled to under local law, he may well desire to make gen-

---

[12] The initial trust corpus of the Jane S. Durand Trust had a value of $331,330. At the 4-percent interest rate decreed by the Federal Estate Tax Regs. in 1938, a trust fund having a value of $331,330 would produce a net yield of $13,253 per year. Art. 10(i)(8), Regs. 80. Jane was to receive the entire net income of her trust until her death or remarriage, whichever was the first to occur. In the event of her remarriage, she was to receive thereafter, until her death, the net income up to $6,500 per year.

The computation can most easily be made by valuing separately (a) her right to $6,500 per year for life and (b) her right to $6,753 per year ($13,253—$6,500) for life or until remarriage, which proved to be the shorter period:

| Annual income | Stipulated actuarial factor | Present value |
|---|---|---|
| (a) $6,500 | $15.74427 | $102,337 |
| (b) $6,753 | 13.00075 | 87,794 |
| Total present value | | 190,131 |

[13] Presumably the value of transfers to third persons at the wife's insistence in settlement of her rights would be taxable gifts from the wife to such third persons.

erous transfers to other persons, especially his children, at the time of the divorce. Such transfers must be carefully examined to make sure that husbands undergoing divorce do not use the occasion to convey in the divorce property settlement agreement, a substantial portion of their property to their children or descendants and thereby avoid gift or estate taxes. *Estate of Hubert Keller, supra; Karl T. Wiedemann, supra* at 570, fn. 2. See 1 Mertens, Law of Federal Gift and Estate Taxation, sec. 5.16, fn. 87 (1959). Thus, it is incumbent upon the taxpayer to prove in such a situation that transfers to (or for the benefit of) persons other than the divorced spouse were not made with donative intent and were made at the insistence of the divorced spouse in full or partial satisfaction of her rights and that the transferor received money or money's-worth consideration for them. *Roland M. Hooker, supra.*

The evidence here indicates that Jane had her son's interests very much in mind in the course of negotiating with decedent and that it was her desire to allocate to Robert and their descendants some portion of the fruits of relinquishment of the rights which were personal to her. She wanted to provide for herself and her son and it was at her demand that the trusts were set up as they were ultimately created. The evidence establishes to our satisfaction that "petitioner's wife insisted upon the insertion in the trust[s] of the provision for the [son]." *Karl T. Wiedemann, supra* at 570. In this respect the instant case differs from the factual situation which we recently faced in *Estate of Hubert Keller, supra*, wherein we held that transfers to adult children as part of a divorce settlement were not made for consideration. In that case the taxpayer failed to demonstrate the nature and value of her rights upon divorce and that the transfers were made at her insistence in satisfaction of those rights pursuant to a written settlement agreement.

We have found as a fact, based upon evidence of record, that at the time of the settlement agreement decedent had personal property worth $1 million and valuable real estate as well. Under Scotch law his wife was entitled to one-third of the personal property upon divorce, or $333,333, and a life estate in one-third of the real property. We do not know the value of the real property, however, as the record is silent as to that. In view of the fact that decedent would have been liable to Jane under Scotch law at least in the amount of $333,333, and in view of the fact that Jane was asserting *her own rights* in bargaining with decedent for the creation of interests in the son, we hold here that $333,333 of the total amount transferred to the three trusts created in contemplation of divorce was transferred for adequate consideration and that the balance was transferred with donative intent and without adequate consideration in money or money's worth. Cf. *United States v. Past, supra; Rosenthal* v. *Commissioner, supra* at 510; *Estate of Lillian B. Gregory, supra.* Compare *Roland M. Hooker, supra.* That

there was at least partial consideration for the creation of interests in Robert in all three trusts is apparent when it is recognized that Jane received for herself a life interest in one of the trusts with a then present value of at most $190,000 in exchange for release of her rights to receive outright at least one-third of $1 million.

Since the creation of all three trusts (the Jane S. Durand Trust, the Robert Story Glen Trust, and the Scotch trust) were integral parts of the unified and overall agreement under which Jane released her rights worth at least $333,333, some portion of the total consideration of $333,333 is allocable to each of the three trusts. Only the Jane S. Durand Trust and the Robert Story Glen Trust are involved in the instant proceeding; we must determine what portions of the $333,333 value of rights, held to be valid consideration within the meaning of sections 2036 and 2043, are applicable to each of these two trusts.

Since the total consideration received by decedent ($333,333) was greater than the value of the only interest received by Jane ($190,131), we conclude that the entire interest transferred to Jane was for consideration. We, therefore, allocate $190,131 of the total consideration to the trust in which she had her interest, the Jane S. Durand Trust. That leaves $143,202 of the total consideration remaining to be allocated. This may be allocated among the three trusts according to the relative interests in the three trusts of persons other than decedent and Jane.

The decedent transferred assets to the three trusts as follows:

| | |
|---|---|
| Robert Story Glen Trust | $155,995 |
| Jane S. Durand Trust | 331,330 |
| Scotch trust | 171,780 |
| Total | 659,105 |

As indicated by our findings, he reserved life interests in the two trusts here involved valued as follows at the dates of transfer:

| | |
|---|---|
| Robert Story Glen Trust | $87,535 |
| Jane S. Durand Trust | 45,962 |

He reserved no life or other interest in the Scotch trust. The values in each trust received by persons other than decedent and Jane may be determined as follows:

| | Original corpus (total interests in all persons) | Less: Value of Jane's interest | Less: Value of decedent's retained interests | Net: Value of all interests other than decedent's and Jane's |
|---|---|---|---|---|
| Robert Story Glen Trust | $155,995 | | $87,535 | $68,460 |
| Jane S. Durand Trust | 331,330 | $190,131 | 45,962 | 95,237 |
| Scotch trust | 171,780 | | | 171,780 |
| Total | | | | 335,477 |

Thus, of the $143,202 consideration remaining to be allocated $\frac{68,460}{335,477}$ or $29,223 is allocable to the Robert Story Glen Trust; $\frac{95,237}{335,477}$ or $40,653 is allocable to the Jane S. Durand Trust. The remaining consideration, $\frac{171,780}{335,477}$ or $73,326, is allocable to the Scotch trust, which was an integral part of the settlement but which is not before us because decedent retained no interest therein.

We hold, therefore, that $29,223 was received by the decedent as partial consideration for the transfer to the Robert Story Glen Trust, and that $230,784 ($40,653 plus the $190,131 previously allocated) was received by him as partial consideration for the transfer to the Jane S. Durand Trust. The remaining portions of the two transfers in trust here involved, $126,772 to the Robert Story Glen Trust and $100,546 to the Jane S. Durand Trust, were made without consideration in money or money's worth within the meaning of sections 2036 and 2043(a).

In his notice of deficiency respondent excluded from the gross estate $82,991.35, the value at the death of decedent of the outstanding income interest of Jane S. Durand in the Jane S. Durand Trust. In an amended answer herein respondent asserted an increased deficiency on the ground that the value of Jane's outstanding income interest in this trust at decedent's death should *not* be excluded from the gross estate.

Section 20.2036–1(a), Estate Tax Regs., provides in pertinent part:

If the decedent retained or reserved an interest or right with respect to all of the property transferred by him, the amount to be included in his gross estate under section 2036 is the value of the entire property, less only the value of any outstanding income interest which is not subject to the decedent's interest or right and which is actually being enjoyed by another person at the time of the decedent's death. * * *

Exclusion of outstanding income interests at decedent's death is also prescribed by the Conference Committee report with respect to the Technical Changes Act of 1949, 1949–2 C.B. 300, which stated:

The expression "not ascertainable without reference to his death" as used in section 811(c)(1)(B) [the predecessor of section 2036] and elsewhere in the conference amendments includes the right to receive the income from transferred property after the death of another person who in fact survived the transferor; but in such a case the amount to be included under section 811(c)(1)(B) in the transferor's gross estate does not include the value of the outstanding income interest in such other person.

This rule of law has been recognized and explained by this Court in *Estate of Mary Fownes Tomec*, 40 T.C. 134 (1963), acq. 1964–1 C.B. 5, as follows (p. 141):

However, in each of these cases the Court recognizes that it is only the property with respect to which the possession or enjoyment or the right to income has

been retained that is includable in the decedent's gross estate under the section of the Internal Revenue laws comparable to section 2036(a) of the Internal Revenue Code of 1954. It is for this reason that where an intermediate life estate in another has been created and the other survives the decedent, all these cases have recognized as a minimum that an amount equal to the value of the intermediate life estate is not to be includable in the gross estate of the grantor of the trust. However, if the intermediate life beneficiary has predeceased the grantor, the value of the entire trust corpus has been held to be includable in the grantor's gross estate since at the date of the grantor's death the right to the income from the entire trust property is retained.

At decedent's death Jane was remarried and, under the terms of the Jane S. Durand Trust, was receiving annual income from the trust of $6,500. It has been stipulated that the value at decedent's death of Jane's right to receive $6,500 per year from the trust for the remainder of her life was $82,991.35.

If we had not reached the conclusion that $230,784 of the consideration paid by Jane for the transfers in trust was paid for the Jane S. Durand Trust, we would hold that the amount otherwise includable in decedent's gross estate under sections 2036 and 2043(a) should be reduced by $82,991.35. However, in the light of our holding that there was partial consideration for this trust, only that part of this outstanding income interest attributable to the *portion* of the total corpus which was transferred without consideration can be allowed.

The total amount transferred to the Jane S. Durand Trust by the decedent was $331,330 and of this total sum $100,546 was without consideration. Applying this ratio to the value of Jane's outstanding income interest at the date of death, $82,991.35, we hold that the amount otherwise includable in decedent's gross estate under sections 2036 and 2043(a) is to be reduced by the further sum of $25,184.70 because of Jane's outstanding income interest. Sec. 20.2036–1(a), Estate Tax Regs.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*

SIMPSON, *J.*, concurs in the result.
RAUM, *J.*, dissents.

---

DRENNEN, *J.*, dissenting: I agree with the first part of Judge Tannenwald's dissent concerning the question of consideration, but I am not certain that he reaches the correct conclusion with respect to allocation of the consideration and the amount to be excluded from the gross estate. I am inclined to take the view that $190,131 should be excluded because that is the amount of the consideration received by decedent for the interest transferred to his wife and the consideration she paid for what she received for herself. Of course, this means I also disagree with the allocation made in the majority opinion.

TANNENWALD, *J.*, dissenting: It seems to me that the majority has been beguiled by Scottish law into permitting a deduction from the gross estate which, absent the local statute involved, would not be allowable. I also believe that even if the majority is correct on the question of consideration, the method of allocation which it adopts is erroneous.

## I. *The Question of Consideration*

I am convinced that the majority decision can be supported only by importing section 2516 of the Internal Revenue Code of 1954 into the estate tax provisions, or by extending the rationale of *Harris* v. *Commissioner*, 340 U.S. 106 (1950), beyond its permissible limits. Either approach, in my opinion, constitutes unjustifiable indulgence in judicial legislation.

In the Robert Story Glen Trust and in the Jane S. Durand Trust, decedent reserved life estates, one primary and one secondary. Section 2036 of the Internal Revenue Code of 1954 requires the inclusion of the principal of such trusts in the gross estate except to the extent that the transfers by which such trusts were established were made for "a consideration in money or money's worth" within the meaning of section 2043. Subsection (b) of section 2043 specifically provides that "a relinquishment * * * of dower or curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"

The basic question therefore is: What were the rights which decedent's former wife, Jane Glen, had and which she surrendered in exchange for the provisions of the divorce settlement? The majority holds that, since under Scottish law she was entitled upon divorce to one-third of decedent's movable estate, she surrendered at least that much. I disagree.

The mere fact that a right is contained in a statute is not determinative. Waivers of statutory rights of election in the event of death are specifically excluded from consideration by section 2043(b).

The majority refers to the release by decedent's former wife "of her rights upon divorce," holding that this is what she gave up and that, to this extent, decedent received consideration. The hard fact is that the right of Jane Glen to one-third of the movable estate under Scottish law could not come into existence until the divorce occurred. Consequently, although divorce was contemplated, she had no right to that one-third when the settlement agreement was entered into and the transfers in trust made in May of 1938. It is significant that the agreement was in no manner contingent upon a divorce decree; it was binding upon the parties 3 months prior to the decree. If the facts in this case were that the divorce had never taken place because dece-

dent had died immediately following the establishment of the trusts (or there had been a subsequent reconciliation followed by decedent's death), the agreement and transfers in trust would nevertheless have remained effective. I doubt that under such circumstances we would hold that the right to a full one-third would constitute consideration.

It is, of course, true that many disputed claims are settled prior to the rendition of judgment or, indeed, even prior to the commencement of a lawsuit, and that in many such situations there is consideration flowing between the parties. But in each of these cases what is being settled is a right asserted to be enforceable *at the time of the settlement*.[1] There is a difference in marital situations. A divorce decree changes the marital status and may indeed create rights the subsequent release of which would constitute adequate and full consideration. But until the decree is entered many of those rights do not exist and therefore their earlier release does not constitute consideration within the meaning of the statute. See *McMurtry* v. *Commissioner*, 203 F. 2d 659, 664 (C.A. 1, 1953), modifying 16 T.C. 168 (1951); *Farid-Es-Sultaneh* v. *Commissioner*, 160 F. 2d 812, 815 (C.A. 2, 1947) (Judge Clark dissenting), reversing 6 T.C. 652 (1946).

In my opinion, we must look to the rights Jane Glen possessed in May of 1938. Those rights were (1) an inchoate right of dower in the husband's realty otherwise known under Scottish law as terce, (2) an inchoate right to inherit one-third of the decedent's personal property, otherwise known under Scottish law as *jus relictae*, and (3) the right of a wife to support. Cloag and Henderson, Introduction to the Law of Scotland, pp. 525–531 (6th ed. 1956). These are the rights she gave up, not a statutory substitute for them which she would become entitled to only upon divorce.

The only one of those rights which qualifies as adequate and full consideration is the right of support. See E.T. 19, 1946–2 C.B. 166, in which respondent recognized that release of support rights by a wife was consideration and expressly stated that he would no longer follow the cases relied upon in *Estate of Robert Manning McKeon*, 25 T.C. 697. It is true that the stipulation of the parties states that under Scottish law a *divorced* wife is not entitled to support. But a wife is entitled to support prior to divorce and the Scottish law provides that in the case of separation the wife is entitled to one-third of the husband's gross income, until the first to occur of the death of the husband, the death of the wife, or the entry of a divorce decree. We have no probative evidence in the record of the decedent's income or property other than the fact that he had $1 million of movable assets. On this

---

[1] This would appear to be the rationale of decisions involving marital settlements where the parties had or were claiming present rights in each other's property. See, e.g., *United States* v. *Past*, 347 F. 2d 7 (C.A. 9, 1965); *Estate of Josephine S. Barnard*, 9 T.C. 61 (1947), modified 176 F. 2d 233 (C.A. 2, 1949).

basis, I think it reasonable to hold that at the minimum Jane Glen relinquished as part of the divorce settlement the right to one-third of the income on $1 million until her death or remarriage [2] or until the decedent's death, whichever first occurred, and that at least to this extent the statutory right to one-third outright was in the nature of a substitute for the right of support.

Jane Glen, if she lived, was entitled to receive payments out of the income of the Jane S. Durand Trust for periods extending beyond her remarriage or decedent's death and, to that extent, the value of her interest exceeded her technical right of support as a wife. However, I do not think we should attempt to refine the value of her support rights that closely. Perhaps if she had settled only for payments during the period of decedent's legal obligation she would have received an interest of the same value as she actually received. The commuted value of the full interest transferred to Jane Glen has been stipulated to be $190,131. I would hold that to this extent decedent received consideration. *Edward B. McLean*, 11 T.C. 543 (1948); cf. *Meyer's Estate* v. *Commissioner*, 110 F. 2d 367, 369 (C.A. 2, 1940) (Judge Hand dissenting), affirming a Memorandum Opinion of this Court, certiorari denied 310 U.S. 651.

Even if the majority is correct that decedent furnished consideration to the extent of the full one-third of $1 million, I would not allow a deduction for the excess over $190,131 which decedent put in trust for the son. It seems to me that we ought not to involve ourselves in whether the transfers for the benefit of the son were motivated by the generosity of decedent or that of his former wife. To do so would be an unwarranted probing of that "elusive state of mind," which the Supreme Court has held to be contrary to the intent of Congress. *Commissioner* v. *Wemyss*, 324 U.S. 303 (1945); see *Estate of Hubert Keller*, 44 T.C. 851, 860 (1965). As I have already pointed out, the right to the full one-third never vested in decedent's former wife. She was not entitled to it until the divorce decree was entered and by that time she had waived it. There is no more of a constructive transfer here from Jane Glen to the son than there is when a legatee renounces a bequest under a will or a widow waives her right of election or her right to take in intestacy. *Brown* v. *Routzahn*,

---

[2] In fact, Jane Glen remarried 11 days after the divorce decree and approximately 3 months after the settlement agreement and transfers in trust. The record, however, does not reveal that this was known to decedent at any time prior to its occurrence, although respondent was specifically afforded the opportunity of presenting evidence in this regard. Moreover, even if it were known to decedent in May of 1938, the probabilities of remarriage within such a short period are not susceptible to actuarial calculation. I would therefore apply only the normal actuarial values relating to remarriage and would not indulge in calculations based on actual fact, as is sometimes done in cases involving health. Cf. *Commissioner* v. *Shively's Estate*, 276 F. 2d 372 (C.A. 2, 1960), reversing a Memorandum Opinion of this Court.

63 F. 2d 914 (C.A. 6, 1933), certiorari denied 290 U.S. 641; sec. 25.2511–1(c), Gift Tax Regs.

*Harris* v. *Commissioner, supra,* in my opinion, has no application to the instant situation. That case involved the question of importing into the gift tax the "founded upon a promise or agreement" requirement of section 812(b) of the Internal Revenue Code of 1939 (the predecessor of section 2053(c) (1) (A) of the Internal Revenue Code of 1954). Neither section is involved in the instant case. The operative part of the opinion of the Supreme Court in *Harris* at no point states that there was consideration for the transfer or that the divorce decree constituted such consideration. In fact the Court grounded its decision on the conclusion that, because of the particular statutory provision, the divorce decree was the "operative fact." See 340 U.S. at 110–111. In short, the presence or absence of consideration was wholly immaterial—at most the decree was a substitute for, or in lieu of, consideration.

The divorce decree herein did not incorporate or otherwise deal with the marital settlement agreement between decedent and his former wife. Moreover, there is no evidence that the divorce court had any power to vary that agreement, a factor which has been considered significant in cases decided subsequent to *Harris. McMurtry* v. *Commissioner, supra; Estate of Myles C. Watson,* 20 T.C. 386 (1953), affd. 216 F. 2d 941 (C.A. 2, 1954) ; Rev. Rul. 60–160, 1960–1 C.B. 374.

Finally, the provision discussed in *Harris* v. *Commissioner, supra,* deals with claims against the estate. In this case, we are dealing with inclusions in the gross estate covered by another section of the estate tax which has its own definitional requirements. I do not believe that, under such circumstances, we should pull ourselves up by our own bootstraps by accepting the importation of one provision of the estate tax into the gift tax via *Harris* and then reimporting that provision back into the estate tax—indeed, into another provision of the estate tax. It may well be that *Harris* ought to be extended so as to eliminate the requirement that the marital settlement agreement be incorporated in the divorce decree. But, until this case, this Court has been reluctant to extend *Harris. Estate of Hubert Keller, supra; Karl T. Wiedemann,* 26 T.C. 565 (1956). And Congress in a major overhaul of the entire Internal Revenue Code in 1954 saw fit so to extend *Harris* only in the gift tax area. See sec. 2516. Since that time, Congress has made major changes in the Internal Revenue Code by the Technical Amendments Act of 1958, the Revenue Act of 1962, and the Revenue Act of 1964. On none of these occasions did Congress attempt to incorporate section 2516 into the estate tax area, although

the American Bar Association had been concerned about the problem and had recommended such action as early as 1956.[3]

Nor do I believe that section 2516 can be incorporated into the estate tax under the doctrine of *pari materia*—this possibility is suggested by the majority opinion, although it carefully refrains from specifically so doing. Much of what I have previously outlined regarding the history of section 2516, and its relevance to the estate tax, is in point here. But, beyond this, section 2516 is a substantive as distinguished from a definitional provision. Under such circumstances, I do not believe that the doctrine of *pari materia* is properly applicable. This distinction was clearly drawn in the opinion of the Circuit Court of Appeals in *Harris* v. *Commissioner, supra,* in dealing with another issue in that case which was not before the Supreme Court. 178 F. 2d 861 (C.A. 2, 1949); see also *MacDonald* v. *United States,* 139 F. Supp. 598 (D. Mass. 1956); *Harris* v. *Commissioner,* 340 U.S. 106, 113, 115 fn. 2 (Mr. Justice Frankfurter dissenting); 1 Mertens, Law of Federal Gift and Estate Taxation, sec. 4.05.

At various points in the majority opinion, it is suggested that there are elements of hostility or arm's-length bargaining in connection with divorce settlements which are not present in other types of nuptial arrangements. This may be true but it is not always the case. In any event, I do not believe it is the function of the courts to decide—at least in gift and estate tax cases—whether the relationship between husband and wife reflects the romantic waltz or the violent apache dance. The gift and estate tax provisions of the Internal Revenue Code set forth an objective standard by which consideration is to be measured.[4] *Commissioner* v. *Wemyss, supra; Merrill* v. *Fahs,* 324 U.S. 308 (1945).

## II. *Allocation of Consideration*

A determination that Jane Glen furnished consideration of $190,131 does not settle the question of how much should be excluded from decedent's gross estate. The answer to this question requires an examination of the language of section 2043 and the relationship of that section to, in this case, section 2036.

Section 2043 specifies that in the case of certain transfers for insufficient consideration "there shall be included in the gross estate only

---

[3] See 81 A.B.A. Rept. 155, 167. A specific proposal to incorporate sec. 2516 into the estate tax is now contained in the revenue bill introduced in the closing days of the last session of Congress. See H.R. 11450, 89th Cong., 1st Sess. (1965), sec. 71.

[4] In dealing with the question of the effect of arm's-length bargaining in the income tax area, the Supreme Court specifically stated that it was "unfettered by the language and considerations ingrained in the gift and estate tax statutes." See *United States* v. *Davis,* 370 U.S. 65, 69 fn. 6 (1962).

the excess of the fair market value at the time of death of the property *otherwise to be included* on account of such transaction, over the value of the consideration received *therefor* by the decedent." (Italics supplied.)

The italicized words are crucial. It would appear that, in determining the amount of consideration to be deducted, the property must first be fragmentized into the various interests therein and a determination made of which interests are includable in the gross estate without regard to the existence of consideration. Only when an interest is found so to be included does one get to the question of how the consideration *for that interest* is to be treated.

If there had been no consideration whatsoever, the value of Jane Glen's outstanding life interest at the time of decedent's death would be excluded under section 2036. Sec. 20.2036–1(a), Estate Tax Regs. Such being the case, this interest is not otherwise included within the meaning of section 2043. Consequently, the consideration paid "therefor" (for this interest) should not be taken into account and the only amount that should be excluded for that interest is the amount excluded by the operation of section 2036, to wit, $82,991.35.[5]

The fact that only the $82,991.35 representing Jane Glen's life interest ought to be excluded does not settle the question of how the $190,131 which she paid for her interest at the time the trust was established should be taken into account in determining the consideration under section 2043 for the other interests in the trusts. The fact is that, whatever may be the measure of the total amount of consideration which she paid, $190,131 was for her life interest. This means that, even if the majority is correct that decedent received approximately $333,000 as consideration, only approximately $143,000 of that consideration should be allocated to the remaining interests. I agree with the allocation in this regard contained in the majority opinion.[6] The majority, however, goes on to give decedent credit for both the $190,131 under section 2043, and a portion of the value of Jane Glen's life interest at the date of decedent's death under section 2036. In this respect, I believe the majority is in error. It seems to me that, although $190,131 is deducted for purposes of calculating the amount of the consideration allocable to interests other than that of Jane Glen, it is not allowable as a deduction for the value of her

---

[5] It should be noted that, in any event, the fair market value at the date of death of an included interest is the limiting factor on the deduction permitted under sec. 2043 ; any excess in the value of the consideration paid cannot be deducted. Thus, even if Jane Glen's interest were includable, for some reason not readily apparent, the amount excluded from decedent's gross estate would still be limited to $82,991.35.

[6] It will still be necessary to determine under the Rule 50 computation whether the allocation of the remaining consideration based upon ratios at the time the trusts were established should be brought forward to the date of decedent's death. *United States* v. *Past, supra; Vardell's Estate* v. *Commissioner,* 307 F. 2d 688 (C.A. 5, 1962), reversing 35 T.C. 50 (1960) ; *Estate of Lillian B. Gregory,* 39 T.C. 1012 (1963).

outstanding life interest. That deduction is limited under 2036 to the agreed value as of the date of decedent's death in the amount of $82,991.35, and section 2043 has no application.[7]

---

[7] This, of course, produces what is superficially a peculiar situation, in that the value of what is excluded by virtue of the operation of sec. 2036 is substantially less than the value of the consideration paid for the interest excluded. This, however, is nothing more than a reflection of the inevitable operation of actuarial factors based on the mortality table.